Rev. 1/9/17

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Michael R. Poplardo

_____

Write the full name of each plaintiff.

-against-

**SEE ATTACHED**

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

____CV_____
(Include case number if one has been assigned)

# COMPLAINT

Do you want a jury trial?
☒ Yes   ☐ No

**RECEIVED**
**MAR 29 2022**
**PRO SE OFFICE**

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Michael | R | Poplardo |
|---|---|---|
| First Name | Middle Initial | Last Name |

47 Merwin Brook Road
Street Address

| Brookfield | Ct | 06804 |
|---|---|---|
| County, City | State | Zip Code |

| (203) 788-6620 | rpoplardo@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:
**Joel** **Adelberg**
First Name / Last Name
**Bedford Central School District Superintendent**
Current Job Title (or other identifying information)
**632 South Bedford Road**
Current Work Address (or other address where defendant may be served)
**Bedford** **NY** **10506**
County, City / State / Zip Code

Defendant 2:
**Stacey** **Haynsworth**
First Name / Last Name
**Human Resource Director**
Current Job Title (or other identifying information)
**632 South Bedford Road**
Current Work Address (or other address where defendant may be served)
**Bedford** **NY** **10506**
County, City / State / Zip Code

Defendant 3:
**Sara** **Richmond**
First Name / Last Name
**Attorney**
Current Job Title (or other identifying information)
**600 3rd Avenue 22nd floor**
Current Work Address (or other address where defendant may be served)
**New York** **NY** **10016**
County, City / State / Zip Code

Defendant 4: John Boucher
First Name / Last Name

President of the Bedford Central Shool Dist. B.OE.
Current Job Title (or other identifying information)

632 South Bedford Road
Current Work Address (or other address where defendant may be served)

Bedford | NY | 10506
County, City | State | Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: Bedford Central School District, Beford NY

Date(s) of occurrence: 9/5/2019 through 11/12/2021

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

Starting on or about September 5, 2019 and continuing relentlessly for more than two years the leaders of the Bedford Central School district and attorneys Richard Kass and Sara Richmond of the Bond, Schonick + KIng law firm violated several of my civil liberties. The actions include forced compliance with the district's directive to undergo medically unneccessary medical services. Stacey Haynsworth, Mr. Kass, Christopher Manno, Joel Adelberg, Colette Dow and John Boucher are the parties primarily responsible for this violation of my rights and the resultant injuries. The injuries related to this act of coercision include disruption of and interference with of an ongoing course of medical treatment, emotional pain and suffering associated with the experience of undergoing unnecessary and unwarrented medical services. These same group of defendents are primarily responsible for placing private medical information in the public square by including mention of such in the publically available minutes of the September 5, 2019 board meeting. Along side this information was information which informed the public that I required impulse control therapy. This information is baseless and false. Togther the publicising of the private information and the false information caused stigmization and loss of reputation. Starting March of 2020 Stacey Haynsworth, Joel Adelberg and Richard Kass applied forceful coercison such as the threats of disciplinary

Page 5

actions as a method to gain access to private medical information that the district had no compelling interest in. I was forced to sign a HIPAA release and an "rider". The release demanded the following information; all dates of medical service, the length of medical sessions, explantions of changes in the nature of medical services and when the changes took place. This coercive act violated my right to be secure from unreasonable searches and violated my medical privacy rights. Stacey Haysworth, Mr. Kass, and Joel Adelberg are primarily responsible for these actions. Starting on or about July 2020 and coninuing until June 2, 2021 Stacey Haynsworth and Sara Richmond consipired to deny me due process rigths during the NYS Education department mandatory 3020A tenure hearing. Actions which constitute depravation of due process rights include withholding critical documents during discovery, falsifying documents, lying during sworn testimony, communicating with the witness during her direct testimony ( Attorney Sara Richmond and Stacey Haysnsworth were passing notes to each other while Stacey Haynsworth was in the witness seat). Brian Garety and Daniel Snow conspired with Stacey Haysnwoth and Richard Kass to ensure that I undergo medically unnecessary and unwarrented medical services. *** SEE ATTACHED****

## INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

forced to undergo unnecessary and unwarrented medical treatment, loss of reputation,

interferrence with and disruption of an ongoing medical relationship / course of

treatment, emotional pain and suffering associated with the relentless coersion and

humiliation and stigmatization

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

compensation for loss or reputation $250,000; compensation for emotional pain and

suffering $300,000; compensation for interference with an ongoing medical relationship and course of treatment $100,000; recovery of fine assessed against my salary $5,000: recover $662.50 spent on the unnecessary medical services ordered by the BCSD:

punitive damages against Brian Gerety $200,000 punitive damages against Attorneys

Richard Kass and Sara Richmond $500,000

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 3/28/2022 | *[signature]* |
| Dated | Plaintiff's Signature |
| Michael R Poplardo | |
| First Name  Middle Initial  Last Name | |
| 47 Merwin Brook Road | |
| Street Address | |
| Brookfield    CT    06804 | |
| County, City    State    Zip Code | |
| (203) 788-6620    RPOPLARDO@gmail.com | |
| Telephone Number    Email Address (if available) | |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes  ☒ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**List of Defendants**

Defendant 1: Joel Adelberg in his official capacity as the Superintendent of the Bedford Central School District

Defendant 2: Stacey Haynsworth

Defendant 3: Sara Richmond

Defendant 4: John Boucher

Defendant 5: Colette Dow

Defendant 6: Beth Staropoli

Defendant 7: Alexander White

Defendant 9: Edward Reder

Defendant 9: Michael Bauscher

Defendant 10: Bill Canavan

Defendant 11: Brian Gerety and Gary Silverstein individually and dba The Therapy Center, LLP a partnership

Defendant 12: Christopher Manno

Defendant 13: Bond, Schoeneck, & King, PLLC

Defendant 14: Bedford Central School District

Defendant 15: Richard G. Kass

**Defendant Information Continued**

**Defendant 5: Colette Dow**
Past President Bedford Central School District Board of Education
18 Peters Lane
Pound Ridge, NY 10576

**Defendant 6 : Beth Staropoli**
Bedford Central School District Board of Education Trustee
632 South Bedford Road
Bedford, NY 10506

**Defendant 7 : Alexander White**
Bedford Central School District Board of Education Trustee
632 South Bedford Road
Bedford, NY 10506

**Defendant 8 : Edward Reder**
Bedford Central School District Board of Education Trustee
632 South Bedford Road
Bedford, NY 10506

**Defendant 9 : Michael Bauscher**
Bedford Central School District Board of Education Trustee
632 South Bedford Road
Bedford, NY 10506

**Defendant 10 : Bill Canavan**
Bedford Central School District Board of Education Trustee
632 South Bedford Road
Bedford, NY 10506

**Defendant 11: Brian Gerety and Gary Silverstein individually and dba The Therapy Center, LLP a partnership**
Partners and Directors of The Therapy Center
333 Adams Street
Bedford Hills, NY 10507

**Defendant 12: Christopher Manno**
Retired Superintendent Bedford Central School District
19 Woodstone Lane
Burlington, NJ 08106

**Defendant 13: Bond,Schoeneck, & King, PLLC**
Managing Member Bond, Schoeneck, & King White Plains office
10 Bank Street Suite 1120
White Plains, NY 10606-1946

**Defendant 14: Bedford Central School District**
632 South Bedford Road
Bedford, NY 10506

Statement of facts continued

1. Gordon Award handed down on September 3, 2019. The Gordon award is the arbitrator's decision in a prior hearing. That hearing was held in June of 2019.
2. September 5, 2019, Bedford Central School District Board of Education met in executive session and ultimately offered the following resolution in a public forum and recorded the resolution in the publicly available minutes of the September 5, 2019 public BOE meeting.
   a. The following resolution: RESOLVED, that whereas on September 3, 2019, the Hearing Officer appointed under Section 3020-a of the Education Law in the Commissioner of Education's Disciplinary Proceeding Case Number 34,061 issued an order finding Tenured Teacher No.19/20-05 guilty of certain charges of misconduct and insubordination, and imposing a penalty of six months' suspension without pay plus one year of impulse control therapy at the teacher's expense, in addition to the therapy that teacher is already receiving, the Board hereby ratifies and implements that order, directs that the teacher be suspended without pay from September 6, 2019 through March 5, 2020, and directs the Superintendent to: (a) ensure that the appropriate payroll personnel withhold the teacher's compensation during that period and make whatever other adjustments to the teacher's compensation may be necessary to ensure that the teacher's compensation for the 2019-20 school year is 40% of what it otherwise would have been, and (b) identify a suitable impulse control therapy provider as soon as reasonably possible and direct the teacher to obtain such therapy from that provider.
      i. This resolution is very troubling
         1. It is inaccurate- the hearing officer's decision does not "impose a penalty of six months' suspension without pay plus one year of impulse control therapy at the teacher's expense, in addition to the therapy that teacher is already receiving". The decision and award open the door to impulse control therapy with the expectation that the district would use discretion thus establishing the understanding that absent any evidence of the need for such and meaningful due diligence efforts, the "impulse control" provision cannot be triggered. None of that is true - (a) absolutely no evidence or knowledge or even suspicion of behavior which would indicate the need for impulse control therapy has ever been provided by the district or expressed in any way by the district - because there is no such evidence -I do not have and never have had impulse control issues and (b) given that the implementation resolution was voted on a mere two days after receipt of the award it is clear that there was ABSOLUTELY no effort at due diligence made prior to the vote

Statement of facts continued

or anytime since (as evidenced by Haynsworth's testimony in the Brown hearing (2021)). The language of the decision is

*"Penalty in Education Law 3020-a proceeding is meant to be corrective, not punitive. The evidence has shown that Respondent is worthy of remediation and that a six month unpaid suspension, effective immediately, is an appropriate penalty. I leave it in the District's discretion to order Poplardo to obtain impulse control therapy, in addition to ordering a continuation of the therapy that Poplardo is currently receiving, for a period of one year from the date of this decision, with all associated costs paid by Respondent."*

*And repeated in the language of the "AWARD*

*"I find that a six-month unpaid suspension, effective immediately, is an appropriate penalty. Pursuant to the District's discretion, Poplardo is ordered to obtain impulse control therapy, in addition to the therapy that he is currently receiving, for at least one year from the date of this decision, with all associated costs paid by Respondent.*

*Dated September 3, 2019 and signed by Melinda G. Gordon, Esq. Hearing officer*

2. The language of the publicly available BOE resolution is a defamatory statement regarding my mental/emotional state.
3. In writing the public resolution as they did, the Bedford Central School District revealed private medical information which caused loss of reputation and stigmatization.

3. Stacey Haynsworth assumed the role of my direct supervisor when she assigned me to work in the central office building instead of the high school where I had worked for the previous 31 years. Her job title is Assistant Superintendent for Human Resources. I am the only teacher assigned to work under the direction of Ms. Haynsworth.
4. September 26, 2019, Ms. Stacey Haynsworth sent a letter notifying me that there was a Board of Education vote taken on September 5. The letter provides some vague language about the impulse control therapy requirement. The letter concludes by stating that more detailed information about the impulse control therapy requirement will be provided soon. This letter was withheld by the district during discovery. Fortunately, I found a hard copy of the letter in my home. The letter became a key part of my defense at hearing.
5. November 2019 Ms. Haynsworth in discussions with Mr. Gerety ( the co-owner and director of the Therapy Center in Bedford Hills NY) set up a therapeutic regime which

Statement of facts continued

would have me attending 42 Impulse Control sessions weekly. Gerety after talking to Haynsworth scheduled me for 42 weekly sessions with one of his employees Dan Snow, LCSW. At no time prior or since have I met with Mr. Garety. Brain Gerety's actions like those of Stacey Haynsworth, Joel Adelberg, Richard Kass, and Christopher Manno were baseless, irresponsible, dangerous and harmful.

6. November 19, 2019, Ms. Haynsworth sent a letter which demands compliance with a regime of Impulse Control Therapy. The "prescription" authored by Haynsworth details the location, provider, frequency of sessions, length of sessions, number of sessions, duration of the treatment, and out of pocket costs.
    a. From this point forward Haynsworth, Kass, and Adelberg stepped into the shoes of a medical professional. They were essentially practicing medicine without a license and with absolutely no relevant competencies. They conspired to dictate the terms of medical treatment and continuously asserted pressure to ensure forced compliance with the medical prescription they had developed.
    b. In her November 19, 2019 letter she also directed me to continue "the therapy you testified at the hearing you were already engaged in". This "prescription" was not developed by a medical professional and is completely outside the competency of Ms. Haynsworth. In this letter Haynsworth includes the following: " Your failure to do so will be considered misconduct and could result in disciplinary proceedings against you." The district produced a falsified version of this November 19, 2019 letter during discovery and attempted to introduce the falsified version of the letter as an exhibit at hearing. Richmond's falsification of this critical document was confronted during the hearing.
    c. Since Haynsworth testified that she and Mr. Kass (the attorney for the school district) worked collaboratively when working through this matter, she placed Mr. Kass squarely in the middle of all decisions including the writing of the treatment prescription. Kass took the extraordinary steps which are in the purview of school administrators and outside the bounds of a legal counsel. For example, he wrote to me directly and he communicated directly with medical service providers who were treating me. At this time, and for months to follow Kass was serving in the position of a co-administrator not simply an attorney providing legal services. There are at least three likely explanations for Kass' decision to step into the role of co-administrator (1) the superintendent had gone on a medical leave of absence which created a leadership vacuum, (2) he was the attorney who represented the district in prior hearings against me and he expressed anger and frustration about his failure to convince hearing officers to dismiss me from employment, (3) he took this matter deeply personally as he and I had several intense personal interactions.
        i. The first case Kass helped the district bring was for showing a Documentary about the processes used to adjudicate claims of sexual harassment on college campuses. That hearing ended with a one-month suspension. Kass and the district demanded six months suspension without pay. Out of frustration, anger, and for other reasons, the district

Statement of facts continued

        with help of Kass as counsel brought a second set of charges. Within days of receipt of the hearing officer decision. Manno and Kass placed me on indefinite paid administrative leave. This action was born out of their frustration and disappointment about a decision which awarded the district only 18% of the punishment they had argued for.

  ii. In December 2018, on the night the district made public its decision to implement the one month suspension I was in great distress and despair. In an attempt to protect the great reputation I had earned during my 29 years as a Bedford Central School District (BCSD) teacher I wrote an email to parents of students that were in my class at the time. In the email I explained that I would be out for one month as a punishment for teaching a lesson to graduating twelfth graders. I explained that after the lesson was over, Superintendent Manno decided the lesson was inappropriate and he decided to ask an arbitrator to suspend me without pay for six months. The email to parents also explained the lesson was about some of the "pitfalls" of being a college student. One of the pit falls discussed during the two-day lesson was the trouble you can get in if you are either a victim of sexual assault or accused of sexual assault. I included a link to the lesson plan in the email. I did not know the lesson plan included a link to the documentary. I also did not know the email would wind up in the hands of some students. Without even discussing the email with me or conducting any investigation into the matter Christopher Manno, the school district's superintendent at the time, placed me on indefinite administrative leave and soon thereafter I was served the second set of charges. This time the charging documents demanded I be fired. The second hearing (the Gordon hearing) resulted in the decision which opened the door to more malicious abuse of the process and sure enough the district (mainly Richard Kass who was the attorney representing the school district , Christopher Manno who was the BCSD Superintendent from July 2016 to October 2019, and Stacey Haynsworth who was the director of Human Resources at the time ) conspired to make compliance with the Gordon award virtually impossible in hopes that they could use failed compliance with the Gordon award as the basis for what district called the "third strike". Literally, in her post hearing brief, Sara Richmond wrote, "three strikes and you are out" while offering no other compelling argument for sustaining the charges (as evidenced by the dismissal of all but one charge and specification). Sara Richmond replaced attorney Kass when he was recused from the hearing. Soon after the order of removal from the case Mr. Kass' untimely retirement was announced.

7. December 9, 2019: As directed, I attend an Impulse Control therapy session with Mr. Snow. Soon after that session I informed the district in an email that my experience at

Statement of facts continued

the therapy center was miserable and in my judgment the professional conduct I was exposed to may be considered malpractice.

8. 11/23/2019-12/05/2019 various email exchanges between me, Haynsworth and Manno - in these emails I indicate I and a medical professional should have some input regarding the "prescription" I have been directed to follow. At every turn my request was shot down and Haysnworth reinforced her position - that she and the district have the right and power to determine not only if medical treatment was warranted but also to determine all of the particulars of such treatment. She did this without the benefit of meaningful input from me.

9. 12/13/2019 5:38 pm Mr. Kass (attorney for the district) sends me the following email which deprives me the right of informed consent, to be free to determine which medical service provider to select if any at all, and the right to negotiate the related private economic transactions ( the "arrangements" the district made included a unique fee structure).

> *Mr. Poplardo*
>
> *The Hearing Officer ordered you to obtain impulse control therapy "at the District's discretion". By not accepting the therapy that the district has arranged for you, you are in violation of that order.*

   a. In this and other correspondence and related activities Kass steps into the role of a manager or administrator eager to go beyond the traditional role of attorney advising a client. In this and other correspondences and activities it is clear he is attempting to bully / intimidate me as his communications carry the weight of legal authority.
   b. In this email he also sets out an odd test that he would apply to the task of determining if Dr. Sullivan, the PhD who I selected to undergo impulse control therapy with, would be an acceptable replacement for the therapist he and Haynsworth had already hand-picked. In setting out the "test criteria" he is again way outside the lanes of an attorney and serving as a manager / administrator. In establishing his "test" of Dr. Sullivan Mr. Kass again attempts to serve in the role of a medical professional, this time a medical services administrator or licensing board who would have the professional knowledge to make the kind of judgment Kass asserted he had the power and privilege to make. This type of work is completely outside the competency of Mr. Kass and can no way be explained as part of the role of an attorney. Mr. Kass was asserting himself into this matter in ways which are way outside the responsibilities of an attorney. In this immediate instance he, again, crossed what should have been a redline separating him from me and keeping him away from the medical service providers involved.
   c. In this email he also demands Dr. Sullivan email him directly so he can judge his credentials and quiz him. Again, clearly not the role of an attorney.

Statement of facts continued

10. 1/29 Haynsworth to Dr. Sullivan includes district's brief and Gordon award - and encourages Sullivan to contact Kass directly
    a. The legal brief included absolutely no information or reference to concerns related to impulsivity - nothing at all in the document does.
    b. Haynsworth warns Dr. Sullivan that if I do not obtain impulse control therapy I will face further disciplinary action. Haynsworth also encouraged Dr. Sullivan to reach out to Mr. Kass directly.
11. The district agrees to substitute Dr. Sullivan for Mr. Snow and directs me to undergo weekly impulse control therapy sessions with Dr. Sullivan.
    a. I attended 5 sessions with Dr. Sullivan during the months of December and January.
12. In a February 2020 email Dr. Sullivan explains "a course of therapy is NOT developed in advance of an evaluation" and he explains he will be completing his evaluation relatively soon.
13. February 2020 email from Haynsworth to Dr. Sullivan, Haynsworth tells Dr. Sullivan that he is expected to ensure I receive impulse control therapy **"regardless of the results of your evaluation"**.
14. 2/18/2020 Kass' letter addressed to Dr. Sullivan
    a. Attempts to dictate the course of therapy - inserts himself into medical decision while offering no knowledge of facts or even a hint of professional competency
15. 2/18/2020 I reply to Kass and explain his demands and correspondences to me and to Dr. Sullivan are "very different from Haynsworth's", and "I suggest we all relax and let the expert medical providers do their work".
    a. A discussion of the significant differences was a major part of my direct examination at hearing. I was permitted to add highlighting to the documents during my testimony as long as I provided the "marked-up" documents to the hearing officer and to the district's counsel (Ms. Richmond, because Kass was rescued by the hearing officer).
16. 3/6/2020 Kass' reply states that there is " no contradiction"
17. 3/4/2020 Haynsworth email: "Reilly's letter fails" and she adds new demands for information from Reilly. Information which is incredibly intrusive and unwarranted. In this email Haynsworth also states, "Dr. Sullivan's February 21, 2020 report makes clear you have failed to undergo the course of ICT ordered by the district- the district expects you to comply". This Haynsworth directive defies the sound medical opinion of a highly regarded doctor who provided a detailed report to the district.
    a. Dr. Sullivan's report to the district included the following:
        *Based on these comprehensive and extensive findings, my professional judgment concurs with that of his psychotherapist, Keri Reilly, that to pursue any additional assessment or "impulse control therapy" with Mr. Poplardo would be unwarranted. To target an individual, insisting he has a problem that he does not have, can actually create unforeseen problems for and cause harm to a person and would, in fact, be unethical.*

Statement of facts continued

      b. In her 3/4/2020 email Haynsworth began demanding all dates of appointments (without limit - dates that will go back in time that is more than a year before the Gordon award), the length of each session, information about what she calls " a change in the nature of my therapy", dates when the changes occurred, and a brief description of the changes. She also warns that if this information is not received I will be subjected to disciplinary actions.

      c. I entered into therapy with Ms. Reilly during the fall of 2018 (about 1 year before the Gordon Award). My primary care doctor suggested I start seeing Ms. Reilly after he and I discussed the stress I was experiencing in the wake of the suicide of a good friend. Our concerns about my sleeping pattern were also a factor in deciding to begin therapy with Ms. Reilly. The district had absolutely no meaningful knowledge of my therapy with Ms. Reilly. The district had no compelling interest in my therapy. At no point prior to the Gordon award did the district express knowledge of, or an interest in my therapy with Ms. Reilly.

18. March 9, 2020 Haynsworth makes an inappropriate inquiry into the reasons why I began therapy in 2018.
19. March 25, 2020, in an email Haynsworth directs me to sign a HIPAA release form and rider which demands incredibly intrusive information from my personal therapist, Ms. Reilly. Information which the district has NO compelling interest in and which is not indicated by the Gordon award.
20. March 27 in an email to the Bedford Teacher Association president and others I make clear that I object to the HIPAA demand on the grounds that I believe the demand is a violation of my privacy rights. I also ask for legal advice from the union and suggest I will seek legal advice on my own if necessary.
21. In an email to the BTA president and others I refer to Haynsworth's directive that I sign the HIPAA form and accompanying rider to be part of a "fishing expedition".
22. In a related email Haynsworth states her "requests are not a violation of my privacy" and restates her demand that I sign and return the HIPAA form she sent to me. At no time prior to this email or since did Haynsworth reach out to me directly to discuss why I believe her HIPAA demands violate my privacy rights. She simply repeated her demand for the signed HIPAA under threat of disciplinary actions.
23. I continued to ask the union for legal advice regarding Mr. Kass, Ms. Haynsworth, and the district's new Superintendent Joel Adelberg's demand that I sign the HIPAA form "under these exact circumstances". Many weeks later NYSUT legal offered only the following "there are no charges against you currently, if charges are brought, we will represent you."
24. I reached out to several attorneys' offices as well as the NY chapter of the ACLU seeking a legal professional's answer to the questions of the "legality" of the demand that I sign the HIPAA and district's seemingly boundless and unreasonable search for information. I did not get answers in part because the world was shut down due to the COVID pandemic and in part because the attorney's reply to my intake was "doesn't fit within the scope of my practice".

7 of 8

Statement of facts continued

25. Desperate to get some legal authority to weigh in, I told my union president I would like to hear what the district's legal basis for demanding I sign the HIPAA is and suggested I would consider the input of Mr. Kass as I contemplate the demand for information from my medical service provider. No response from Kass was ever received .
26. June 2020, Haynsworth in an email to my union president declares I have had enough time to get legal advice and she sets June 9 as the deadline to sign the HIPAA form and mail it to the district.
27. June 17, 2020, formal disciplinary charges are delivered. Those charges seek my dismissal from employment for failure to obtain impulse control therapy, failure to ensure the district received the incredibly intrusive information it demanded, refusal to sign a HIPAA release form and rider and a completely false claim of perjury. The perjury charge was dismissed by hearing officer Brown as baseless before I was called as a witness.
28. June 18, 2020 the district suggested the charges may be withdrawn if I sign the HIPAA and Rider.
29. June 18, 2020 under the strain of the incredible coercion (the charges) I sent the signed HIPAA forms to the district.
30. Charges were not withdrawn or stopped as "promised".
31. June 2020 the health provider informs Haynsworth that they will not comply with the HIPAA request because the forms Haynsworth presented are defective.
32. July 2020 my union attorney and Mr. Kass attempted to negotiate a solution to the HIPAA charge in a way that avoids the unconstitutional intrusion into my medical privacy. That discussion falls apart and the district stands by the charge that seek to punish me for my failure to sign the HIPAA as I was directed to.
33. July 2020 Haynsworth presents the same HIPAA to different departments within the medical services provider organization - badgering them and hoping to find someone who would give her the information she requested.
34. October 2020 after several deceptive presentations and "badgering" Haysworth obtains some but not all of the information demanded by the HIPAA form.
35. Hearing unfolds during 16 months (starting in August 2020 and ending October 2021)
36. Hearing officer's decision dismisses all but 1 of the 14 charges and specifications brought, leaving standing only the charge for failure to sign the HIPAA on or before the deadline established by Haysnworth, Kass, and Adelberg.
    a. The punishment for not signing the HIPAA is a $5,000 fine.