UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL R. POLARDO,

                              Plaintiff,

        v.

JOEL ADELBERG, *et al.*,

                              Defendants.

No. 22-CV-2533 (KMK)

OPINION & ORDER

Appearances:

Michael R. Poplardo
Brookfield, CT
*Pro Se Plaintiff*

Gerald S. Smith, Jr., Esq.
Valentina Lumaj, Esq.
Silverman & Associates
White Plains, NY
*Counsel for Defendants Joel Adelberg, John Boucher, Colette Dow, Beth Staropoli, Alexander White, Edward Reder, Michael Bauscher, Bill Canavan, Christopher Manno,*

Howard M. Miller, Esq.
Michael P. Collins, Esq.
Bond, Schoeneck & King, PLLC
White Plains, NY
*Counsel for Defendants Sara Richmond; Bond, Schoeneck, & King, PLLC;*

Shari B. Fein
Garson & Jakub LLP
New York, NY
*Counsel for Defendants Brian Gerety; Gary Silverstein; The Therapy Center, LLC*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Michael Poplardo ("Plaintiff") brings this Action against Joel Adelberg;

Stacey Haynsworth; Christopher Manno; John Boucher; Collette Dow; Beth Staropoli;

Alexander White; Edward Reder; Michael Bauscher; Bill Canavan; Richard Kass; Sara

Richmond; Bond, Schoeneck, & King, PLLC; Brian Gerety; Gary Silverstein; Daniel Snow; and

The Therapy Center, LLP (collectively, "Defendants"), alleging violations of his Fourth and

Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("§ 1983") and state law claims of

medical malpractice, defamation, slander, libel, and intentional infliction of emotional distress

("IIED").  (Am. Compl. (Dkt. No. 33).)[1]  Before the Court are Defendants' Motions To Dismiss

(the "Motions").  (*See* Not. of Mot. (Dkt. No. 42); Not. of Mot. (Dkt. No. 46); Not. of Mot. (Dkt.

No. 50).)  For the following reasons, Defendants' Motions are granted in part and denied in part.

I.  Background

A.  Parties

Plaintiff is a teacher employed by the Bedford Central School District ("BCSD"), where,

as of September 2019, he had been employed for 31 years.  (Compl. 10.)[2]

_____

[1] Defendants Richard Kass and Daniel Snow have not been served and have not appeared in this Action.  (*See generally* Dkt.)

Plaintiff has sued Adelberg, Haynsworth, Manno, Boucher, Dow, Staropoli, White, Reder, Bauscher, and Canavan in their official capacities only.  (*See* Am. Compl. 1.)

[2] Although "an amended complaint ordinarily supersedes the original and renders it of no legal effect," *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)), "[g]iven Plaintiff's pro se status . . . the Court will consider both the [First] Amended Complaint and [] Complaint together, *Guy v. MTA New York City Transit*, 403 F. Supp. 3d 131, 133 (E.D.N.Y. 2017) (considering the pro se plaintiff's third amended complaint and first amended complaint together where the third amended complaint omitted facts pled in the first amended complaint).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Defendants Christopher Manno ("Manno"), Joel Adelberg ("Adelberg"), and Stacy Haynsworth ("Haynsworth;" collectively, the "Supervisory Defendants") appear to have been Plaintiff's supervisors at BCSD. Manno served as BCSD's Superintendent from July 2016 to October 2019. (Compl. 12.) Adelberg is the current Superintendent of BCSD and replaced Manno in October 2019. (*See* Am. Compl. 3; Compl. 12.) Haynsworth is BCSD's Assistant Superintendent for Human Resources and served for a period as Plaintiff's "direct supervisor." (*See* Am. Compl. 3; Compl. 10.) Haynsworth also serves as BCSD's "designated HIPAA officer." (Pl's Opp'n to Supervisory Defs' Mot. To Dismiss ("Pl's Supervisory Defs Opp'n") 24 (Dkt. No. 54).)

Defendants John Boucher, Colette Dow, Beth Staropoli, Alexander White, Edward Reder, Michael Bauscher, and Bill Canavan (collectively, the "BOE Defendants") are Trustees of the BCSD Board of Education. (*See* Am. Compl. 3.)

Defendant Sarah Richmond ("Richmond") is an attorney employed by Defendant Bond, Schoeneck, & King, PLLC ("BSK") who served as counsel for BCSD. (*Id.* at 3, 14.)

Defendants Brian Gerety ("Gerety") and Gary Silverstein ("Silverstein") are co-founders, partners, and directors of Defendant The Therapy Center, LLC ("TTC," collectively, the "Therapy Center Defendants"). (*Id.* at 3.) Plaintiff alleges that Gerety proposed a "prescription for therapy" for him at the direction of Haynsworth. (*Id.* at 9.)

B. Factual Background

1. Plaintiff's First Disciplinary Hearing

During 2018, Plaintiff showed one of his classes "a Documentary about the processes used to adjudicate claims of sexual harassment on college campuses." (Compl. 11.) Manno

---

The Court cites to the ECF-stamped page number at the upper right-hand corner of all documents unless otherwise noted.

"decided the lesson was inappropriate and . . . ask[ed] an arbitrator to suspend [Plaintiff] without

pay for six months." (*Id.* at 12.)

In December 2018, Plaintiff was informed he would be subject to a "one month

suspension." (*Id.* at 11.)  The evening Plaintiff found out about the suspension, he

> wrote an email to parents of students that were in [his] class at the time.  In the email [he] explained that [he] would be out for one month as a punishment for teaching a lesson to graduating twelfth graders . . . about some of the []pitfalls[] of being a college student[,] . . . [including] the trouble [college students] can get in if [they] are either a victim of sexual assault or accused of sexual assault.

(*Id.* at 12)  In this email, Plaintiff inadvertently included a link to the documentary he had shown

to his class. (*Id.*)

## 2.  Plaintiff's Second Disciplinary Hearing

After Plaintiff sent the email, Manno "placed [Plaintiff] on indefinite administrative leave

and soon thereafter [Plaintiff] was served [a] second set of charges . . . demand[ing] [Plaintiff] be

fired." (Compl. at 12.)  A disciplinary hearing was held pursuant to N.Y. Educ. Law 3020-a

before Hearing Officer Melinda G. Gordon ("Gordon"). (*Id.* at 10.)  After the hearing

concluded, Gordon issued a written decision on September 3, 2019 that included the following

statement:

> [The] [p]enalty in [an] Education Law 3020-a proceeding is meant to be corrective, not punitive.  The evidence has shown that [Plaintiff] is worthy of remediation and that a six month unpaid suspension, effective immediately, is an appropriate penalty.  I leave it in [BCSD]'s discretion to order [Plaintiff] to obtain impulse control therapy, in addition to ordering a continuation of the therapy that [Plaintiff] is currently receiving, for a period of one year from the date of this decision, with all associated costs paid by [Plaintiff].

(*Id.*)  Gordon also entered an award (the "Gordon Award") that stated in part:

> I find that a six-month unpaid suspension, effective immediately, is an appropriate penalty.  Pursuant to [BCSD]'s discretion, [Plaintiff] is ordered to obtain impulse control therapy, in addition to the therapy that he is currently receiving, for at least one year from the date of this decision, with all associated costs paid by [Plaintiff].

4

(*Id.*)  After the Gordon Award was entered, the BOE Defendants met in executive session on September 5, 2019 and, when the meeting concluded, entered the following resolution in their published minutes:

> RESOLVED, that whereas on September 3, 2019, the Hearing Officer appointed under Section 3020-a of the Education Law in the Commissioner of Education's Disciplinary Proceeding Case Number 34,061 issued an order finding Tenured Teacher No.19/20-05 guilty of certain charges of misconduct and insubordination, and imposing a penalty of six months' suspension without pay plus one year of impulse control therapy at the teacher's expense, in addition to the therapy that teacher is already receiving, the Board hereby ratifies and implements that order, directs that the teacher be suspended without pay from September 6, 2019 through March 5, 2020, and directs the Superintendent to: (a) ensure that the appropriate payroll personnel withhold the teacher's compensation during that period and make whatever other adjustments to the teacher's compensation may be necessary to ensure that the teacher's compensation for the 2019-20 school year is 40% of what it otherwise would have been, and (b) identify a suitable impulse control therapy provider as soon as reasonably possible and direct the teacher to obtain such therapy from that provider.

(*Id.* at 9.)[3]  After the decision was entered, Haynsworth "assumed the role of [Plaintiff's] direct supervisor . . .[and] assigned [him] to work in the central office building instead of the high school[.]"  (*Id.* at 10.)  Plaintiff was "the only teacher assigned to work under the direction of . . . Haynsworth."  (*Id.*)[4]

---

[3] Plaintiff alleges that the resolution remains available in two forms: "as part of the video recording of the . . . meeting and as written into the minutes of the . . . meeting."  (Am. Compl. 20.)  The BCSD public website continues to host the resolution in both formats.  (*Id.*)

Plaintiff claims the BOE Defendants "held many executive sessions related to [BCSD]'s award enforcement efforts through the year[;] during those sessions the [BOE Defendants] were informed of and authorized the . . . tactics [of the Supervisory Defendants]."  (Pl's Supervisory Defs Opp'n 20–21.)

Plaintiff also alleges that "[d]uring many executive sessions the [BOE Defendants] were updated about activities related [to] the efforts to obtain Plaintiff's private medical information and the [BOE Defendants] voted to advance the disciplinary charge that sought to punish Plaintiff for resisting demands that he sign the HIPAA [form] and rider."  (*Id.* at 23.)

[4] Plaintiff alleges that at some point, Haynsworth "'sent [a document] to BSCD [sic] colleagues" explaining that Plaintiff may "'leave campus during the work day to attend counseling session[s] ordered by the [H]earing [O]fficer.'"  (Pl's Supervisory Defs Opp'n 20.)

On September 26, 2019, Haynsworth sent a letter to Plaintiff informing him of the BOE Defendants' September 5 decision and "provid[ing] some vague language about the impulse control therapy requirement [and] stating that more detailed information about the impulse control therapy requirement [would] be provided soon." (*Id.*)

On or about November 12, 2019, Haynsworth and Adelberg decided to reach out to Gerety, a former BCSD employee. (Am. Compl. 9.) On or about November 15, 2019, Haynsworth consulted with Gerety to "set up a therapeutic regime [of] 42 [weekly] [i]mpulse [c]ontrol [therapy] sessions." (Compl. at 10–11.) Plaintiff alleges that during these consultations, Gerety informed Haynsworth that "[TTC] does not recognize [i]mpulse [c]ontrol [t]herapy and . . . [that] '[i]mpulse [c]ontrol [t]herapy in and of itself isn't specifically a thing.'" (Am. Compl. 19.)

On November 19, 2019, Haynsworth sent Plaintiff a letter providing a "'prescription' . . . detail[ing] the location, provider, frequency of sessions, length of sessions, number of sessions, duration of the treatment, and out of pocket costs," and informing Plaintiff he must continue "'the therapy [he had] testified at the hearing [he was] already engaged in.'" (Compl. at 11.) Haynsworth also warned Plaintiff that "'[y]our failure to [comply] will be considered misconduct and could result in disciplinary proceedings against you.'" (Compl. at 11; Am. Compl. 9.) On November 23, Plaintiff emailed Haynsworth and Manno requesting that he "and a medical professional" be allowed to provide input on the impulse control therapy; Haynsworth denied this request. (Compl. 13.)

On December 9, 2019, Plaintiff attended "an [i]mpulse [c]ontrol therapy session with Mr. Snow." (*Id.* at 12.)[5]  After the appointment, Plaintiff "informed [BCSD] in an email that [his] experience at [TTC] was miserable and in [his] judgment the professional conduct [he] was exposed to may be considered malpractice."  (*Id.* at 13.)[6]

On December 13, 2019, Richard Kass ("Kass"), counsel for BCSD, sent an email to Plaintiff informing him that "'Hearing Officer [Gordon] ordered you to obtain impulse control therapy 'at [BCSD]'s discretion.[']  By not accepting the therapy that [BCSD] has arranged for you, you are in violation of that order."  (Compl. at 13.)  Kass also informed Plaintiff of "test criteria" that another psychologist that Plaintiff was proposing to receive impulse control therapy from, Dr. James Sullivan ("Sullivan"), would need to meet in order for BCSD to determine whether Sullivan was an "acceptable replacement" for TTC.  (*Id.*; *see also* Pl's Opp'n to Therapy Ctr. Defs' Mot. To Dismiss ("Pl's Therapy Ctr. Defs Opp'n") 8 (Dkt. No. 56).)

---

[5] During this session, Plaintiff provided Snow with a copy of Haynsworth's November 19 letter. (Am. Compl. 19.)  According to Plaintiff, Snow commented that "'I don't have a lot of information about the arrangement [Gerety] made with [] Haynsworth. I will get more information before next week's session.'" (*Id.*)

Plaintiff has alleged that "Snow is the only employee of [TTC] to actually interact with [him]."  (Pl's Supervisory Defs Opp'n 48.)

[6] Plaintiff alleges that Haynsworth had "at least one . . . phone conversation with Gerety and Snow about [his] treatment at [TTC] subsequent to [P]laintiff's participation" in this session, but does not allege what was discussed during the conversation.  (Am. Compl. 10.)

Plaintiff also alleges that "[t]he Therapy Center violated HIPAA law and regulations again when it refused to provide plaintiff a copy of medical records related to [Plaintiff's] interactions with [TTC]."  (Am. Compl. 19–20.)  However, Plaintiff then clarifies that "[TTC] informed [P]laintiff that it would not provide the medical records to [P]laintiff unless and until [P]laintiff paid [TTC] $100 which was the account balance due from [P]laintiff for the therapeutic session conducted by Snow."  (*Id.* at 20.)

At some point, BCSD approved Sullivan as a replacement for TTC, and Plaintiff "attended 5 sessions with Dr. Sullivan during the months of December [2019] and January [2020]." (Compl. 14.)  On January 29, 2020, Haynsworth sent an email to Sullivan warning him that "if [Plaintiff] d[id] not obtain impulse control therapy [he] [would] face further disciplinary action." (*Id.*)[7]

During February 2020, Plaintiff and Sullivan had several apparently tense exchanges with Haynsworth and Kass. (Compl. 14; Am. Compl. 6–7.)[8]  Sullivan appears to have understood that the December and January visits were part of an initial review of Plaintiff's case, as he informed Haynsworth and Kass that "a course of therapy is NOT developed in advance of an evaluation" and explained he would submit an evaluation soon. (Compl. 14.)  Haynsworth responded that Sullivan was "expected to ensure [Plaintiff] receive[d] impulse control therapy 'regardless of the results of [Sullivan's] evaluation[.]'" (*Id.*)

On February 21, 2020, Sullivan submitted a report that included the following evaluation:

> [M]y professional judgment concurs with that of [Plaintiff's] psychotherapist, Keri Reilly, that to pursue any additional assessment or []impulse control therapy[] with [Plaintiff] would be unwarranted.  To target an individual, insisting he has a problem that he does not have, can actually create unforeseen problems for and cause harm to a person and would, in fact, be unethical.

(Compl. 14.)  On March 4, 2020, Haynsworth informed Plaintiff via email that "'Dr. Sullivan's February 21, 2020 report makes clear you have failed to undergo the course of [impulse control therapy] ordered by [BCSD] - [BCSD] expects you to comply.'" (*Id.*)

---

[7] Haynsworth also attached BCSD's brief submitted to Hearing Officer Gordon and the award that Gordon issued on September 3, 2019. (Compl. 14.)

[8] Plaintiff alleges that Adelberg was "a cc recipient of the emails." (Am. Compl. 10.)

Haynsworth commented in the same email that a letter that Plaintiff had submitted from Keri Reilly ("Reilly"), Plaintiff's psychotherapist, "fail[ed]" and made requests "for information from Reilly . . . [including] all dates of appointments. . . , the length of each session, information about . . .[] [any] change[s] in the nature of [Plaintiff's] therapy[], dates when the changes occurred, and a brief description of the changes." (Compl. 14–15.)[9]  On March 9, 2020, Haynsworth asked Plaintiff to explain why he began therapy in 2018.  (Id.)  On March 25, 2020, Haynsworth sent Plaintiff an email and directed him to sign a HIPAA release form and rider for information from Reilly.  (Id.)  During the next several months, Plaintiff unsuccessfully sought out legal advice as to whether he was required to sign the HIPAA release form.  (Id.)  In early June 2020, Haynsworth set a deadline of June 9, 2020 for Plaintiff to sign the HIPAA release form and mail it to BCSD.  (Id. at 16.)

### 3.  Plaintiff's Third Disciplinary Hearing

On June 17, 2020, BCSD filed disciplinary charges against Plaintiff "seek[ing] [his] dismissal from employment for failure to obtain impulse control therapy, failure to ensure [BCSD] received the . . . information it demanded, refusal to sign a HIPAA release form and rider[,] and . . . perjury." (Compl. 16.)  On June 18, 2020, BCSD informed Plaintiff that the disciplinary charges "may be withdrawn" if he signed the HIPAA form and rider.  (Id.)  Plaintiff signed the form and rider the same day, but BCSD did not withdraw the charges.  (Id.)[10]  During

---

[9] In his Amended Complaint, Plaintiff suggests that the scope of this request was broader and included records related to "medical appointments with LCSW." (Am. Compl. 11.)

[10] Haynsworth and Kass submitted the signed forms to "Nuvance Health" but the forms were repeatedly rejected as "defective." (Am. Compl. 12; Compl. 16.)  Plaintiff alleges that during this process Kass committed "fraud . . . [by] mischaracteriz[ing] the HIPAA [form] as a request for information mandated by Hearing Officer Gordon . . . [and] couching Nuvance [H]ealthcare's rejection of the HIPAA forms as actions which interfere[d] with and disrupt[ed] legal proceedings." (Am. Compl. 12.)  In October and November 2020, Haynsworth received the requested information.  (Am. Compl. 13; Compl. 16.)

July 2020, Plaintiff's union attorney and Kass attempted to "negotiate a solution to the HIPAA charge" but the negotiation failed.  (*Id.*)

Hearing Officer Brown ("Brown") began Plaintiff's 3020-a hearing (the "Brown Hearing") in August 2020, and it continued until October 2021.  (*Id.*)  Plaintiff claims that during the hearing, Richmond and Haynsworth engaged in several wrongful acts, including withholding evidence, forging and falsifying documents, perjury, suborning perjury, and cheating.  (Am. Compl. 14–18.)[11]

---

After the disciplinary hearing had begun, Haynsworth and Kass "revised the HIPAA form and rider and directed plaintiff [to] sign the new forms[.]"  (Am. Compl. 12.)  "Plaintiff, the Bedford Teacher Association's [P]resident, and [P]laintiff's attorney informed Haynsworth, Kass, and Adelberg . . . that the new directive was inappropriate and . . . [P]laintiff [did] not sign the new HIPAA form and rider."  (*Id.*)

Plaintiff alleges that Haynsworth and Kass's actions resulted in altering "his participation in an ongoing course of treatment because the forward[-]looking demand for information made [P]laintiff fearful [BCSD] would acquire private medical information that would be created during sessions which would have . . . been conducted."  (Am. Compl. 13.)  It is unclear whether the forward-looking term was included in the form that Plaintiff signed in June or in the revised form that he refused to sign.  However, Plaintiff asserts that this fear resulted in the "(1) reduction in the number of sessions that [P]laintiff would have . . . scheduled and (2) less than full and open participation in the sessions [P]laintiff did attend."  (*Id.*)

[11]  Plaintiff alleges that as these acts were occurring, he "reached out to Adelberg in hopes of addressing the perjury concern and other due process concerns internally[,] but Adelberg completely failed to conduct an investigation into the matter or to even discuss with Plaintiff [his] . . . concerns."  (Pl's Supervisory Defs Opp'n 26.)

Plaintiff alleges that he referred "his accusation of perjury to the district attorney's ["DA"] office in Westchester NY" and that "[the] DA's office closed the case after a short conversation with Plaintiff during which it was explained that . . . the DA's office would investigate the perjury claim if the referral came from the [H]earing [O]fficer and . . . if Plaintiff pushed hard to have perjury investigated by the DA's office he would be exposing Haynsworth and perhaps Richmond to felony criminal charges which include the risk of jail time for Haynsworth and which would most certainly be grounds for Haynsworth's dismissal from public employment."  (*Id.*)

Plaintiff also filed "a complaint with the . . . First Judicial Department Attorney Disciplinary Committee" and was later "informed that the [C]ommittee does not have the resources to investigate" and told to "reconnect with the [C]ommittee if some other authority conduct[ed] an investigation or adjudicate[d] the claims . . ."  (*Id.*)

At the conclusion of the hearing, Brown issued a decision that "dismisse[d] all but 1 of the 14 charges and specifications brought, leaving standing only the charge for failure to sign the HIPAA [form] on or before the deadline established by Haynsworth. . . ." (Compl. 16.)  For his failure to timely sign the HIPAA form, Plaintiff was fined $5,000.  (*Id.*)

C.  Procedural History

Plaintiff filed his Complaint on March 29, 2022.  (*See* Compl.)  On May 27, 2022, Defendants Richmond and BSK submitted a letter requesting a pre-motion conference.  (*See* Letter from Michael P. Collins, Esq, (May 27, 2022) (Dkt. No. 24).)  On June 1, 2022, the Supervisory Defendants and the BOE Defendants submitted a letter requesting a pre-motion conference.  (*See* Letter from Gerald S. Smith, Esq. to Court (June 1, 2022) (Dkt. No. 26).)  On June 3, 2022, Plaintiff filed a letter with the Court requesting to file an amended complaint.  (*See* Letter from Michael R. Poplardo to Court (June 3, 2022) (Dkt. No. 29).)  The Court granted this request on June 7, 2022.  (*See* Dkt. No. 31.)  Plaintiff filed his Amended Complaint on June 25, 2022.  (*See* Am. Compl.)  On July 12, 2022, Defendants Richmond and BSK submitted a pre-motion letter requesting to file a motion to dismiss, as did the Supervisory Defendants and the BOE Defendants.  (*See* Letter from Michael P. Collins, Esq, (July 12, 2022) (Dkt. No. 34); Letter from Gerald S. Smith, Esq. to Court (July 12, 2022) (Dkt. No. 35).)  On July 13, 2022, the Therapy Center Defendants filed a pre-motion letter requesting to file a motion to dismiss.  (*See* Letter from Shari B. Fein, Esq. to Court (June 13, 2022) (Dkt. No. 37).)  On August 4, 2022, the Court issued Orders setting a briefing schedule for Defendants' Motions to Dismiss.  (*See* Order (Dkt. No. 40); Order (Dkt. No. 41).)  On August 26, 2022, the Supervisory Defendants and the BOE Defendants filed their Motion To Dismiss and accompanying papers.  (*See* Not. of Mot.; Def's Mem. of Law in Supp. of Mot. To Dismiss ("Supervisory Defs' Mem.") (Dkt. No. 43); Decl. of Gerald S. Smith, Esq. (Dkt. No. 44).)  On August 26, 2022, the Therapy Center

Defendants filed their Motion To Dismiss and accompanying papers.  (*See* Not. of Mot.; Def's Mem. of Law in Supp. of Mot. To Dismiss ("Therapy Ctr. Defs' Mem.") (Dkt. No. 47); Decl. of Shari B. Fein, Esq. (Dkt. No. 48).)  On August 26, 2022, Defendants BSK and Richmond filed their Motion To Dismiss and accompanying papers.  (*See* Not. of Mot.; Def's Mem. of Law in Supp. of Mot. To Dismiss ("BSK & Richmond Mem.") (Dkt. No. 51); Decl. of Michael P. Collins, Esq. (Dkt. No. 52).)  On September 29, 2022, Plaintiff filed his Memoranda in Opposition.  (*See* Pl's Supervisory Defs Opp'n; Pl's Mem. of Law in Opp'n to Richmond and BSK's Motion To Dismiss ("Pl's BSK & Richmond Opp'n") (Dkt. No. 55); Pl's Therapy Ctr. Defs Opp'n.)  On October 14, 2022, the Therapy Center Defendants and Richmond and BSK filed their Replies.  (*See* BSK & Richmond Reply (Dkt. No. 59); Therapy Ctr. Defs' Reply (Dkt. No. 60).)  On October 21, 2022, the Supervisory Defendants filed their reply.  (*See* Supervisory Defs' Reply (Dkt. No. 64).)

II.  Discussion

A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'"  *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *cert. denied*, 540 U.S. 1012 (2003)).

1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of

subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question").

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *See Carter*, 822 F.3d at 57.

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does

a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*

(alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at

555.  Although "once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's]

[complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."

*Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*,

517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves

regarding procedural rules and to comply with them." (italics and citation omitted)).

### B.  Analysis

Plaintiff raises a number of federal Constitutional claims in his Amended Complaint,

which the Court construes as follows.  Plaintiff alleges that the Supervisory and BOE Defendants

denied him procedural due process while requiring him to seek impulse control therapy and that

Richmond and Haynsworth also denied him procedural due process during the third disciplinary

hearing.  (Am. Compl. 2.)  Plaintiff claims that the Supervisory and BOE Defendants' actions

during the same period violated his substantive due process rights to "medical privacy, medical

autonomy, informed consent, and economic liberty."  (*Id*.)  Finally, Plaintiff argues that the

Supervisory Defendants violated the Fourth Amendment by requiring him to sign the HIPAA

form and rider and using those documents to secure Plaintiff's medical information.  (*Id.*)

Plaintiff also raises three state law claims. Plaintiff asserts that the Supervisory Defendants and BOE Defendants defamed, libeled, and slandered him.  (*Id.*)  Plaintiff alleges that the Supervisory Defendants and BOE Defendants committed IIED.  (*Id.*)  Finally, Plaintiff argues that the Therapy Center Defendants committed medical malpractice.  (*Id.*)

### 1.  Personal Involvement

The Supervisory Defendants (Manno, Adelberg, Haynsworth), BOE Defendants, and Therapy Center Defendants (Gerety, Silverstein, and TTC) argue that Plaintiff has failed to sufficiently allege their personal involvement in the alleged constitutional violations.  (*See* Supervisory Defs' Mem. 20–23; Therapy Ctr. Defs' Mem. 6.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation and quotation marks omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit "held that 'there is no special rule for supervisory liability[,]' thereby doing away with 'the special standards for supervisory liability' . . . and clarifying that 'a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' "  *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *32 (S.D.N.Y. Mar. 26, 2021) (quotation marks omitted) (quoting *Tangreti*, 983 F.3d at 617, 618).  Therefore, even with respect to supervisors, "a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Even construing his submissions liberally, the Court finds that Plaintiff has failed to adequately allege Manno's personal involvement.  None of Plaintiff's pleadings includes any references to actions taken by Manno individually.  Instead, Plaintiff relies on group pleading, repeatedly alleging that actions were taken by "Kass, Manno, Haynsworth, and Adelberg."  (Am Compl. 5.)  Such pleading is insufficient to allege personal involvement, particularly since Manno served as BCSD's Superintendent at all relevant times.  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff alleges that Adelberg "demand[ed] that [Plaintiff] sign the HIPAA form" (Compl. 15), filed the "disciplinary charges" that initiated the Brown Hearing, (Am. Compl. 13), and "failed to conduct an investigation into [Plaintiff's allegations of Haynsworth and Richmond's actions during the Brown Hearings] or to even discuss with [Plaintiff] Plaintiff's emails about perjury, cheating, and other due process concerns," (Pl's Supervisory Defs Opp'n 26).  Because the demands to sign the HIPAA form underly Plaintiff's substantive and procedural due process claims, Plaintiff has sufficiently alleged Adelberg's personal involvement.

Plaintiff alleges that Haynsworth sent the "prescription" requiring him to attend sessions at TTC, (*see* Compl. 11), sent the email requesting Plaintiff sign the HIPAA release form, (*id.* at 16), sent the email informing Plaintiff he would face disciplinary charges if he failed to sign the HIPAA form by June 9, 2020, (*id.*), and falsified evidence and perjured herself during the Brown

Hearing, (Am. Compl. 15–16).  Because several of these actions underly Plaintiff's due process and other claims, Plaintiff has sufficiently alleged Haynsworth's personal involvement.

Plaintiff refers to the BOE Trustees only as an entity, and claims they are liable because they voted to "(a) approve the language of the resolution [concerning the Gordon Award], (b) order that the entire resolution be read aloud during a public BOE meeting, and (c) vote to approve the minutes that included the entire resolution and award with absolutely no redactions." (Pl's Supervisory Defs Opp'n 37.)  Additionally, Plaintiff claims that the BOE members are liable because they voted to "charg[e] Adelberg with the task of selecting Plaintiff's medical service provider. . . [,] accept[] Dr. Sullivan's report,. . . [and] . . . punish Plaintiff [for refusing] to comply with the district's ICT directives." (*Id.* at 34–35.)  Plaintiff also alleges that "[d]uring many executive sessions the [BOE Defendants] were updated about activities related [to] the efforts to obtain Plaintiff's private medical information . . . ." (*Id.* at 23.)  Given that the actions approved in these votes are central to several of Plaintiff's claims and that the BOE Defendants make decisions as a collective body, the Court finds Plaintiff has sufficiently alleged their personal involvement.  *See Komondy v. Gioco*, 253 F. Supp. 3d 430, 458 (D. Conn. 2017) (finding member of zoning board of appeals who voted to deny plaintiff's request for a variance and appeal from permit denial was personally involved in alleged constitutional violation); *Ruston v. Town Bd. for Town of Skaneateles*, No. 06-CV-927, 2009 WL 3199194, at *4 (N.D.N.Y. Sept. 30, 2009), *aff'd*, 610 F.3d 55 (2d Cir. 2010) ("Where the alleged deprivations occurred as a result of a board vote, involvement as a voting member of the board may be sufficient personal involvement.").

Plaintiff alleges that Gerety "informed [BCSD] that there is no such thing as [i]mpulse [c]ontrol [t]herapy . . . . [and] explained why [TTC] does not recognize [i]mpulse [c]ontrol

"[t]herapy," (Am. Compl. 6), but then still "set up a therapeutic regime [in consultation with Haynsworth] which would have [had] [Plaintiff] attending 42 [i]mpulse [c]ontrol [therapy] sessions," (Compl, 10–11).  Plaintiff has thus sufficiently alleged Gerety's personal involvement in the alleged violations.

Plaintiff does not allege any actions taken by Silverstein or TTC, instead conclusorily stating that "Gerety's participation implicates his business partner, Gary Silverstein and their business [i.e. TTC]."  (Am. Compl. 10.)  Plaintiff has also stated that "Silverstein is included as a named defendant because he is both a partner in the business (TTC) and a director with oversight responsibilities."  (Pl's Therapy Ctr. Defs Opp'n 22.)  Plaintiff has thus failed to adequately allege their personal involvement.  *See Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *25 (S.D.N.Y. Mar. 26, 2015) (citations omitted) ("To state a claim against each individually named [D]efendant, Plaintiff must include allegations as to that [D]efendant.").

### 2.  State Action

BSK and Richmond argue that Richmond, as a private attorney engaged by BCSD, is not a state actor for purposes of a § 1983 action.  (*See* BSK & Richmond Mem. 9.)  Plaintiff argues in response that Richmond acted "outside the guardrails of traditional attorney functions" and as such should be considered a state actor.  (Pl's BSK & Richmond Opp'n 4.)

"[I]t is well-established that . . . attorneys performing a lawyer's traditional functions as counsel . . . do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."  *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997); *see also Licari v. Voog*, 374 F. App'x 230, 231 (2d Cir. 2010) (summary order) ("It is well established that private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims." (citation omitted)); *Harrison v. New York*, 95 F. Supp. 3d 293, 328 (E.D.N.Y. 2015) (holding that "public defenders[,] . . . court-appointed counsel[,] and private attorneys do

not act under the color of state law merely by virtue of their position"); *Shorter v. Rice*, No. 12-CV-111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) (holding that neither "public defenders . . . nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position").

However, a plaintiff may state a claim against a private attorney pursuant to § 1983 by "alleg[ing] facts demonstrating that [she] acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quotation marks omitted). Conclusory allegations that a private individual conspired or took concerted action with state actors will not suffice. *See id.* ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." (citation omitted)); *Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (same). Rather, a plaintiff must allege "a sufficiently close nexus between the State and the challenged action of the private party so that the action of the latter may be fairly treated as that of the State itself, or [that] [the private actor] [was] jointly engaged with state officials in a conspiracy to deprive the plaintiff of his constitutional rights." *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664–65 (2d Cir. 2009) (summary order) (quotation marks, citations, and brackets omitted); *see also Ciambriello*, 292 F.3d at 324 (noting that a plaintiff can state a claim by alleging that a private actor was "a willful participant in joint activity with the State or its agents" (quotation marks omitted)); *Johnson*, 669 F. Supp. 2d at 450 ("[A] plaintiff must allege that the private entity and state actors carried out a deliberate, previously agreed upon plan, or that their activity constituted a conspiracy or meeting of the minds." (quotation marks and brackets omitted)).

Here, Plaintiff claims that during the Brown Hearing, Richmond worked with Haynsworth to commit a series of wrongful and potentially illegal acts, including withholding evidence, forging and falsifying documents, perjury, suborning perjury, and cheating.  (Am. Compl. 14–18.)  Among other allegations, Plaintiff specifically claims that "Richmond, and Hay[n]sworth presented a document into evidence which had a forged signature," and that "Haynsworth committed perjury during her sworn testimony.  Hayn[s]worth knew she was lying. Richmond knew Hay[n]sworth was lying."  (*Id.* at 15–16.)  These allegations are sufficient to establish that Richmond may have been acting in concert with Haynsworth.  *See Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 198–99 (E.D.N.Y. 2010) (finding that the plaintiff had sufficiently alleged concerted action by asserting that private defendants, including an attorney, "provided the police with a false premise for the search . . . and accompanied the police on the alleged unlawful search"); *Friedman v. N.Y.C. Admin. for Children's Servs.*, No. 04-CV-3077, 2005 WL 2436219, at *8–9 (E.D.N.Y. Sept. 30, 2005) (denying private attorney's motion to dismiss when the plaintiff alleged that attorney had purposefully "provided [the government agency] with false and malicious information").  As such, for the purposes of adjudicating Plaintiff's § 1983 claims, the Court will consider Richmond a state actor.

### 3.  Constitutional Claims

#### a.  Procedural Due Process

Plaintiff claims that, during two different periods, he was denied procedural due process by different Defendants.  First, Plaintiff alleges that the Supervisory and BOE Defendants denied him procedural due process while implementing the penalty imposed in the Gordon Award and requiring him to seek impulse control therapy.  (Am. Compl. 4–8.)  Second, Plaintiff alleges that Richmond and Haynsworth denied him procedural due process during the Brown Hearing.  (*Id.* at 13–18.)  Defendants respond that Plaintiff was provided with all constitutionally required

process, (*see* Supervisory Defs' Mem. 11–12; BSK & Richmond Mem. 14–16), and that his claim is foreclosed because he failed to avail himself of available state law remedies for any alleged violations, (*see* Supervisory Defs' Mem. 13–14; BSK & Richmond Mem. 17).

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause thus "bars arbitrary, wrongful government actions, and guarantees procedural fairness when a state action deprives a citizen of a protected interest in life, liberty, or property." *Wiesner v. Rosenberger*, No. 98-CV-1512, 1998 WL 695927, at *3 (S.D.N.Y. Oct. 6, 1998) (citing *Daniels v. Williams*, 474 U.S. 327, 330–32 (1986)). "The fundamental requirement of the Due Process Clause is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.'" *Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). "To plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (citation, alterations, emphasis, and quotation marks omitted). "The appropriate process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Plaintiff first claims that he was denied due process during implementation of the penalty included in the Gordon Award, claiming that the "[Supervisory Defendants] and [BOE Defendants] supplanted the expectation of judgment, care, and due diligence . . . when developing plans for award implementation and during the implementation of the award." (Am. Compl. 4.)  The Supervisory and BOE Defendants counter that because the Gordon Award specifically provided that "[p]ursuant to [BCSD]'s discretion, [Plaintiff] is ordered to obtain impulse control therapy[,]" (Compl. 10), Plaintiff cannot establish a property interest in the implementation process, as it was specifically entrusted to their discretion, (*see* Supervisory Defs' Reply 8–9).  The Supervisory and BOE Defendants argue in the alternative that, even if Plaintiff has established a property interest in the implementation of the award, he has failed to demonstrate that he was denied due process.  (*See* Supervisory Defs' Mem. 10–12.)

To establish deprivation of a property interest, a plaintiff must demonstrate an interest "in a benefit that is more than an abstract need or a desire for it . . . she must, instead, have a legitimate claim of entitlement to it under state or federal law in order to state a § 1983 claim." *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (alteration and quotation marks omitted) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  A benefit, however, is not a protected entitlement if government officials may grant or deny it in their discretion.  *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation omitted).  Here, the Gordon Award specifically stated that, "[p]ursuant to [BCSD]'s discretion, [Plaintiff] is ordered to obtain impulse control therapy . . . for at least one year from the date of this decision, with all associated costs paid by [Plaintiff]."  (Compl. 10.)  Even read in the light most favorable to Plaintiff, the Gordon Award entrusts the decision as to whether Plaintiff will be required to obtain therapy and the specific implementation of such therapy to the discretion of the Supervisory and BOE

Defendants.  Plaintiff can assert no interest in such a discretionary decision.  *See Rosendale v. Iuliano*, No. 99-CV-11701, 2002 WL 215656, at *6 (S.D.N.Y. Feb. 13, 2002) (holding that "[w]hile a government entity may not always make the right decision, the question of whether a particular decision was right, so long as the entity in question possesse[d] discretion in reaching this decision, does not raise a federal question") (internal quotation marks and citation omitted); *DeMunn v. Sheepdog Warrior LLC*, No. 19-CV-1517, 2020 WL 6318221, at *6 (N.D.N.Y. Oct. 28, 2020) (finding that plaintiff did "not have a cognizable entitlement to the enforcement of zoning laws [because] [u]nder New York state law, the decision to enforce zoning and building codes rests in the discretion of the public officials charged with enforcement" (quotation marks and citation omitted)).  As such, Plaintiff's claim must fail.

Additionally, even if Plaintiff had established a property interest in the implementation of the penalty, the Supervisory and BOE Defendants correctly point out that Plaintiff has failed to adequately allege that he was denied due process.  As a general rule, plaintiffs are not required to exhaust all administrative remedies before commencing a § 1983 action.  *See Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) ("It is well-established that § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies or state administrative remedies." (citations omitted)).  However, "to the extent a plaintiff claims a violation of procedural due process under the Fourteenth Amendment, failure to pursue available procedural remedies can preclude a § 1983 claim."  *Forcucci v. Bd. of Educ. of Hamburg Cent. Sch. Dist.*, No. 14-CV-830, 2014 WL 5393024, at *5 (W.D.N.Y. Oct. 23, 2014) (citation omitted); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 467 n.9 (2d Cir. 2006) ("Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply

because he failed to avail himself of the opportunity." (citation, alteration, and quotation marks

omitted)).   Moreover, mere disagreement with an adjudicator's "description of [a plaintiff's]

argument, or even the purported shallowness of its analysis, does not alone mean [the plaintiff]

was denied . . . due process." *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at \*9

(S.D.N.Y. Feb. 14, 2018) (citation, alterations, and quotation marks omitted).

Here, Plaintiff, by his own admission, has already had an opportunity, with the assistance

of counsel, to litigate the issue of his compliance with the therapy requirement during the Brown

Hearing because the Supervisory and BOE Defendants specifically brought a charge against him

for "failure to obtain impulse control therapy," (Compl. 16).   Moreover, Plaintiff was largely

vindicated in the Brown Hearing because thirteen of the fourteen charges, including apparently

the charge concerning his failure to attend therapy, were dismissed.   (*Id*.)   However, even if

Plaintiff had not prevailed, the Supervisory and BOE Defendants are correct that Plaintiff would

have had numerous state proceedings available to him that he could pursue to remedy an adverse

decision, including Article 75 and Article 78 proceedings.   (*See* Supervisory Defs' Mem. at 13.)

It is black-letter law that "a 'state provides adequate due process when it provides reasonable

remedies to rectify a legal error by a local administrative body.'"   *Maione v. Zucker*, No. 18-CV-

7452, 2020 WL 5751582, at \*8 (S.D.N.Y. Sept. 25, 2020) (quoting *N.Y. State Nat'l Org. for

Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001)); *see also Arredondo v. Cnty. of Nassau*, No.

11-CV-710, 2012 WL 910077, at \*10 (E.D.N.Y. Mar. 16, 2012) (noting that Article 75 and 78

proceedings "are more than adequate post-deprivation remedies for purposes of due process").[12]

Thus, Plaintiff has failed to allege that he was denied due process.

---

[12] Plaintiff appears to argue that he could not have pursued relief under N.Y. Educ. Law §
3020-a, because he was not on notice of the actions of the Supervisory and BOE Defendants that
violated due process.   (*See* Pl's Supervisory Defs Opp'n 6–8.)   However, beside the fact that

Plaintiff also alleges that he was denied due process during the Brown Hearing because Richmond, Haynsworth, and Adelberg withheld evidence, forged and falsified documents, perjured themselves, suborned perjury, and cheated. (Am. Compl. 14–18.) The Supervisory Defendants argue in response that Plaintiff's claim is barred because he failed to pursue available post-deprivation remedies in state court. (*See* Supervisory Defs' Mem. 17–19.)

The Court agrees with Defendants that Plaintiff's claim fails because he has an adequate post-deprivation remedy available in the form of Article 75 or Article 78 proceedings. *See Maione*, 2020 WL 5751582, at *8.[13]

---

Plaintiff has not addressed the question of whether claims could still be brought under Article 75 or Article 78, the relevant question for purposes of due process analysis is whether proceedings are available as a matter of law to any party to pursue, not to the particular party before the court. *See, e.g., Campo v. N.Y.C. Emps' Ret. Sys.*, 843 F.2d 96, 102 n.6 (2d Cir. 1988) ("[A plaintiff] may be barred by [the statute of] limitations from presently proceeding pursuant to Article 78. However, the fact that Article 78 may not now be available to [the plaintiff] for that reason would not affect the result herein because [the plaintiff] had available an Article 78 remedy whether she timely utilized it or not.").

[13] The Supervisory and BOE Defendants also argue that the doctrine of collateral estoppel bars Plaintiff's claim. (*See* Supervisory Defs' Mem. at 17–19.) "The doctrine of collateral estoppel . . . bars re[-]litigation of a specific legal or factual issue in a second proceeding where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) (quotation marks and citation omitted). However, it is not clear to the Court that collateral estoppel would bar consideration of the issues that Plaintiff raises with the Brown Hearing, which largely relate to the admissibility, sufficiency, and reliability of the evidence presented to Hearing Officer Brown, rather than the final decision that Brown reached based on that evidence. Additionally, drawing all inferences in Plaintiff's favor, it is not clear from the record before the court that any of the specific issues he raises were "actually litigated and actually decided" in the Brown Hearing. *Grieve*, 269 F.3d at 153. As such, the Court finds that, given the limited record currently before it, the doctrine of collateral estoppel is inapplicable. *Cf. Greene v. Civilian Police Rev. Bd.*, No. 86-CV-212, 1988 WL 31857, at *4 (S.D.N.Y. Mar. 25, 1988) (finding plaintiff was collaterally estopped from litigating evidentiary issue where record of prior proceeding demonstrated that the "presiding judge repeatedly explained the importance of the hearing to [the plaintiff], and attempted to elicit his participation. Further, [the plaintiff] was

For the foregoing reasons, Plaintiff's procedural due process claims are dismissed.

### b. Substantive Due Process

Plaintiff argues that the Supervisory Defendants and the BOE Defendants violated his right to "medical privacy" when they attempted to require him to seek impulse control therapy. (Am. Compl. 8–10.)  Defendants counter that Plaintiff's allegations essentially repackage his procedural due process claim and should be barred for the same reasons.  (*See* Supervisory Defs' Mem. 14–15.)

The Fourteenth Amendment guarantees "'more than fair process'; it 'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.'"  *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (alteration in original) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).  To state a substantive due process claim, Plaintiff must allege: (1) a valid liberty or property interest, (2) which Defendants infringed in an arbitrary or irrational manner.  *See Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001).  Along with most of the other Circuits, the Second Circuit has "explicitly recognized the right to privacy in one's personal information, including information about one's body."  *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018) (citations omitted); *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) ("Medical information in general, and information about a person's psychiatric health . . . in particular, is information of the most intimate kind . . . . [Thus] [plaintiff] had a protected privacy right in the medical records sought by [defendant].").  When the alleged infringement results from "executive action that does not involve penological interests," the Court must consider "whether the action was so 'arbitrary' as to 'shock the conscience.'"  *Hancock*, 882 F.3d at 66 (quoting

---

represented by counsel who vigorously asserted the [plaintiff]'s contentions[,] [and] [c]ounsel cross-examined witnesses and argued for suppression [of the evidence].).

*O'Connor*, 426 F.3d at 203). "'[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *Id.* (alteration in original). "Mere irrationality is not enough: 'only the most egregious official conduct,' . . . will subject the government to liability for a substantive due process violation based on executive action." *O'Connor*, 426 F.3d at 203.

Plaintiff claims that the Supervisory and BOE Defendants' request that he sign the HIPAA release form and rider infringed, among other rights, his right to "medical privacy." (Am. Compl. 8.) Plaintiff alleges that the release allowed the Supervisory Defendants to access his entire course of treatment with his personal psychotherapist, including: "(a) a . . . list of all dates of plaintiff's . . . appointments with [the therapist], (b) the length of each . . . session, (c) a statement of whether there [had] been any changes in [P]laintiff's course of therapy, (d) a description of the changes in [P]laintiff's course of therapy, and (e) a description of when the changes took place." (*Id*. at 11.) The form also indicated that this information was to be provided on an ongoing basis until August 2020. (*Id.*) He claims that the Supervisory Defendants "had no compelling interest in" his medical information; could not provide a "rational or legal basis" for their request; attempted to coerce him into signing the form through "threat[s] of adverse job actions. . . and . . . dismissal"; and ultimately filed "disciplinary charges which sought to punish [him] for failure to sign the . . . form." (*Id.*)

Plaintiff's allegations are strikingly similar to the facts of *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005). In *O'Connor*, a teacher had been placed on leave by his school board based on reports of inappropriate classroom behavior. *Id.* at 191. As a condition of his reappointment, the school board requested that the teacher see a psychiatrist and also execute a release form granting the school board access to all of the teacher's medical records, including records of his

treatment at an alcoholism-rehabilitation facility. *Id.* at 192, 201. The teacher never signed the form and instead brought suit challenging the board's request as a violation of his right to privacy. *Id.* at 192. On appeal, the Second Circuit agreed, finding that the board's requirement that the teacher sign the release form to be reinstated was an unconstitutional condition because it violated the teacher's "right to hold [his medical] information private." *Id.* at 201. The Second Circuit was particularly troubled that the board's request encompassed the teacher's mental health records, emphasizing that "information about a person's psychiatric health . . . in particular, is information of the most intimate kind." *Id.* The Second Circuit reversed the district court's grant of summary judgment and remanded the case for trial because there were significant factual questions as to whether the board's actions were taken with the "inten[t] to injure . . . spite . . . [or] oppress" the teacher so as to "shock the conscience." *Id.* at 203–04.

While Plaintiff's claim relates to only a specific subset of his medical records concerning his treatment by his psychotherapist, it was a request for precisely this type of medical information that the Second Circuit called out as especially concerning in *O'Brien. Id.* at 201. Moreover, reading Plaintiff's allegations in the light most favorable to him, the Supervisory Defendants had no reason to request this information and used Plaintiff's failure to agree to turn over the information as grounds to "punish" him by filing disciplinary charges. (Am. Compl. at 11.) Thus, at this early stage, Plaintiff has plausibly alleged that the Supervisory and BOE Defendants' conduct "shocks the conscience." *O'Brien*, 426 F.3d at 203; *cf. Burns v. Cook*, 458 F. Supp. 2d 29, 42 (N.D.N.Y. 2006) (finding teacher-plaintiff adequately alleged a violation of her right to privacy where she claimed that school board members had "shared her medical

records with unauthorized persons. . .[which] alone [was] sufficient to state outrageous and arbitrary government conduct").[14]

As such, Plaintiff has adequately pled a substantive due process violation of his right to medical privacy.

### c.  Fourth Amendment

Plaintiff also argues that the Supervisory Defendants and the BOE Defendants violated his right under the Fourth Amendment to be free of unreasonable searches and seizures by requesting that he sign the HIPAA form and waiver.  (Am. Compl. 10–13.)  Defendants argue that Plaintiff has not adequately alleged a Fourth Amendment violation because Plaintiff's own claims indicate that he signed the HIPAA authorization form and rider to allow Defendants to access the information.  (*See* Supervisory Defs' Mem. 15–16.)

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.  "A search occurs when the Government acquires information by either physically intruding on persons, houses, papers, or effects, or otherwise invading an area in which the individual has a reasonable expectation of privacy."  *United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014) (quotation marks and citation omitted), *on reh'g en banc*, 824 F.3d 199 (2d Cir. 2016).  "A seizure occurs when the Government interferes in some meaningful way with the individual's

---

[14] Supervisory Defendants appear to argue in response that Plaintiff's claims are barred because he was "given an opportunity to posit [his] objections . . . at the [Brown Hearing]." (Supervisory Defs' Mem. at 15.)  However, the Second Circuit has been clear that the Fourteenth Amendment guarantees "'more than fair process'; it 'cover[s] a substantive sphere as well, barring certain government actions *regardless of the fairness of the procedures used to implement them*.'"  *Hurd*, 984 F.3d at 1087 (alteration in original) (emphasis added) (citation omitted).

possession of property." *Id.* "The Fourth Amendment's warrant requirement protects one's privacy interest in home or property.  Absent exigent circumstances or some other exception, [law enforcement officials] must obtain a warrant before they enter the home to conduct a search or otherwise intrude on an individual's legitimate expectation of privacy." *U.S. v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000).  Similarly, to be valid a "warrantless seizure must meet one of the recognized exceptions to the [F]ourth [A]mendment's warrant requirement." *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) (quotation marks and citation omitted).

The Fourth Amendment is not violated where a warrantless search is conducted after "proper consent" has been "voluntarily given." *United States v. Matlock*, 415 U.S. 164, 165–66 (1974).  "It is well settled that a warrantless search does not violate the Fourth Amendment if the authorities have obtained the voluntary consent of a person authorized to grant such consent, and that so long as the [authorities] do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." *United States v. Hernandez*, 85 F.3d 1023, 1028–29 (2d Cir. 1996) (alterations, citations, and quotation marks omitted).  "Voluntariness is determined by reference to the 'totality of all the circumstances.'" *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006) (quoting *United States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004)).  "[C]onsent may be inferred from an individual's words, act, or conduct." *United States v. Walker*, 922 F. Supp. 724, 727 (N.D.N.Y. 1996) (quotation marks omitted).

As an initial matter, the Court finds that Plaintiff voluntarily signed the form authorizing BCSD to collect his medical records.  Plaintiff alleges that he refused to sign the HIPAA form and rider for several months and only signed after the Supervisory and BOE Defendants "suggested the charges [raised in the Brown Hearing] may be withdrawn if [he] signed." (Compl. 16.)  After Plaintiff signed the form, the Supervisory and BOE Defendants did not

withdraw the "charges . . . as 'promised.'" (*Id.*)  Plaintiff does not specifically allege that the

Supervisory and BOE Defendants were acting deceptively in making the suggestion, but the

Court draws this inference from the timing of the events.

Even under those circumstances, Plaintiff's consent was voluntary, as this was not a

situation "where 'the [government's] misrepresentation of purpose [was] so extreme,' [that] a

person [was] 'deprived . . . of the ability to make a fair assessment of the need to surrender his

privacy[.]'"  *United States v. Montes-Reyes*, 547 F. Supp. 2d 281, 288 (S.D.N.Y. 2008)

(alteration omitted) (quoting Wayne R. LaFave et al., Criminal Procedure § 3.10(c) (3d ed.

2007)) (finding defendant's consent to search was involuntary where police deceived him by

claiming there was a pressing need to search his room for a fictitious missing girl).  Even

drawing all inferences in Plaintiff's favor, the apparently deceptive promise does not invalidate

his consent, as the Supervisory and BOE Defendants did not create a false sense of exigency that

prevented Plaintiff from making a fair assessment of whether he should consent, nor was the

deception in any way extreme.  By his own admission, Plaintiff had months to seek legal counsel

and consider whether to sign the forms.  (*See* Compl. 15.)  While the promise was made only

after the Supervisory Defendants filed disciplinary charges, Plaintiff was familiar with the

disciplinary hearing process, having participated in the Gordon Hearing a year earlier, and thus

had an accurate sense of what the Brown Hearing would entail and could make a realistic

judgment as to whether he believed the Supervisory Defendants would comply with their

promise.  Additionally, it is unclear whether all fourteen of the charges were related to Plaintiff's

failure to sign the HIPAA form and thus, whether Plaintiff could reasonably rely on a promise to

withdraw all charges if he signed the form.  Plaintiff's decision to sign the forms the same day

the promise was made does suggest that Plaintiff believed that he could rely on the promise, (*see*

Compl. 16), but Plaintiff's reliance is insufficient, in and of itself, to make his consent involuntary given the totality of the circumstances. *Cf. United States v. Giraldo*, 743 F.Supp. 152, 153–55 (E.D.N.Y. 1990) (finding consent involuntary where plaintiff consented to search only because police officers had been disguised as gas workers and represented they were entering plaintiff's residence to search for an active gas leak).

Because Plaintiff consented to the search of his medical records, his Fourth Amendment claim is dismissed.[15]

---

[15] The Supervisory Defendants have also argued that Plaintiff's claim fails because the medical records were in the possession of a third-party and thus Plaintiff had no reasonable expectation of privacy. (*See* Supervisory Defs' Mem. 16.)

The Supreme Court has "uniformly [ ] held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *El-Nahal v. Yassky*, 835 F.3d 248, 253 n.2 (2d Cir. 2016) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "Thus, a Fourth Amendment search[ ] . . . does not occur unless the search invades an object or area [in which] one has a subjective expectation of privacy that society is prepared to accept as objectively reasonable." *United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017) (alterations in original) (quotation marks omitted) (quoting *United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008)); *see also Illinois v. Caballes*, 543 U.S. 405, 408 (2005) ("Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment." (citation and quotation marks omitted)). "As a general rule, a person only has a Fourth Amendment expectation of privacy in documents that he owns or possesses." *Webb v. Goldstein*, 117 F. Supp. 2d 289, 295 (E.D.N.Y. 2000) (citing *United States v. Miller*, 425 U.S. 435, 440–42 (1976)); *see also Young v. Murphy*, 90 F.3d 1225, 1236 (7th Cir. 1996) (patient had no standing to raise Fourth Amendment challenge to investigators' examination of nursing home records because he had no possessory rights in the records).

The Supreme Court has also held that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by [that party] to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 445–46 (citations omitted). Courts in the Second Circuit have held that the third-party doctrine applies to the government's disclosure of prisoners' medical records during criminal proceedings. *See Stiggle v. Reichard*, No. 18-CV-1066, 2021 WL 2917630, at *4 (D. Conn. July 12, 2021) (explaining that the third-party doctrine "has been applied in the context of medical records"); *Schlosser v. Kwak*, No. 20-CV-393, 2020 WL 4003502, at *9 (D. Conn. July 15, 2020), *aff'd*, 16 F.4th 1078 (2d Cir. 2021) (holding that plaintiff lacked standing to object to disclosure of medical information included in warrant affidavits because information was

### 4. Qualified Immunity

The Supervisory and BOE Defendants argue that they are entitled to qualified immunity. (*See* Supervisory Defs' Mem. 23–24.)  However, Plaintiff has alleged claims against these Defendants only in their official capacities.  (*See* Am. Compl. 1.)  Qualified immunity applies only to suits against officials in their individual capacities.  *See Brandon v. Holt*, 469 U.S. 464, 468, 470–72 (1985) (explaining that officials may be shielded by qualified immunity when sued in their individual capacities, but that qualified immunity does not apply to actions brought against officials in their official capacities, because an official capacity suit is a suit against the municipality); *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) ("[B]ecause a claim asserted against a government official in his official capacity is essentially a claim against the governmental entity itself, the defense of qualified immunity, which may be available to individual defendants as they are sued in their individual capacities, is not applicable to claims against them in their official capacities.").  Thus, the Supervisory and BOE Defendants' requests are denied.

---

provided by a third party); *Webb*, 117 F. Supp. 2d at 295 (finding plaintiff did not have standing to object to third-party parole officer's disclosure of medical records to authorities).

However, Plaintiff's claim is distinguishable from the claims brought by prisoners because the focus of his objection is the steps the Supervisory Defendants took to pressure him into signing the HIPAA waiver forms so that they could access his medical information, not to the disclosure of that medical information in a subsequent proceeding once it was in the Supervisory Defendants' possession.  (*See* Am. Compl. 10–13.)  The Supervisory Defendants do not appear to dispute that they would have been unable to access Plaintiff's medical records absent his signed HIPAA waiver; thus, the Court rejects the Supervisory Defendants' argument that Plaintiff had no reasonable expectation of privacy in his medical information and so cannot raise a Fourth Amendment claim.

### 5.  State Claims

#### a.  Timeliness

BSK and Richmond argue that Plaintiff's claims for IIED and defamation, libel, and slander against them should be dismissed as time-barred.  (*See* BSK & Richmond Mem. 13.) Defendants claim that Plaintiff's claims accrued on September 5, 2019, the day that the allegedly defamatory minute entry was posted on the BCSD website and in the video recording.  (*Id.*)  The Therapy Center Defendants also assert that Plaintiff's medical malpractice claim is time-barred. (*See* Therapy Ctr. Defs' Mem. 5.)

Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,]" a statute of limitations defense may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint ."  *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Zhou v. Wu*, No. 14-CV-1775, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (citing *Staehr*); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alteration in original) (quotation marks and citation omitted)); *cf. Wang v. Palmisano*, 51 F. Supp. 3d 521, 536–37 (S.D.N.Y. 2014) (refusing to dismiss several employment claims under state and federal law as untimely pursuant to Rule 12(b)(6) because of two uncertainties on the face of the complaint as to when the claims accrued).

New York Civil Practice Law and Rules ("CPLR") § 215(3) requires that an action for defamation, libel, or slander "be commenced within one year," that is, within one year of the original publication of the statements.  *See Melious v. Besignano*, 4 N.Y.S.3d 228, 229 (App.

Div. 2015) ("A cause of action alleging defamation is governed by a one-year statute of limitations . . . [that] accrues at the time the alleged statements are originally uttered." (citations omitted)); *see also Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 596–97 (S.D.N.Y. 2014) ("Under CPLR § 215(3), a claim for libel must be asserted within one year of the date on which the libelous material first was published, that is, displayed to a third party." (quotation marks omitted)); *Karam v. First Am. Bank of N.Y.*, 593 N.Y.S.2d 640, 642 (App. Div. 1993) ("In an action for slander, the [s]tatute of [l]imitations runs from the time of the utterance, not the discovery of the slanderous matter." (citation omitted)).

CPLR § 215(3) also provides the one-year limitations period that governs Plaintiff's IIED claim.  *See Solomon v. Siemens Indus., Inc.*, No. 11-CV-1321, 2014 WL 1271192, at *19 (E.D.N.Y. Mar. 26, 2014) ("[T]he limitations period applicable to claims for [IIED] is one year."); *accord Patterson v. Balsamico*, 440 F.3d 104, 112 n.4 (2d Cir. 2006) (noting that "New York courts have held that a claim for damages for [IIED] is subject to the one-year statute of limitations in [CPLR] [§] 215(3)" (citations omitted)).

Finally, to satisfy the New York statute of limitations, a medical malpractice action "must be commenced within two years and six months of the act, omission or failure complained of." CPLR § 214–a; *see also Bridges v. Corr. Servs.*, No. 17-CV-2220, 2022 WL 1500633, at *7 (S.D.N.Y. May 12, 2022) ("In New York, the statute of limitations for medical malpractice is two and a half years and runs from the date of the alleged negligent act or omission that caused the patient's injury." (citing CPLR § 214–a)), *appeal dismissed* (Dec. 27, 2022); *Gibbons v. Fronton*, 661 F. Supp. 2d 429, 432 (S.D.N.Y. 2009) ("The statute of limitations in New York for medical malpractice is two and a half years. . . ." (citation omitted)).

36

The Court agrees with Defendants that Plaintiff's claims for defamation, libel, and slander all accrued on September 5, 2019 when the statements concerning the Gordon Award were published.  (*See* Compl. at 10.)  Plaintiff commenced this action on March 29, 2022, more than two years after the statements were published.  (*See id*.)  Plaintiff's defamation, libel, and slander claims are thus dismissed.  *See Melious*, 4 N.Y.S.3d at 229 ("A cause of action alleging defamation is governed by a one-year statute of limitations . . . [that] accrues at the time the alleged statements are originally uttered.").

The timing of Plaintiff's IIED claim is the subject of some debate, but the Court finds that this claim is also time-barred.  BSK and Richmond argue that Plaintiff's IIED claim accrued on September 5, 2019 because Plaintiff's sole reference in his Amended Complaint to his IIED claim comes in the heading of the section that primarily discusses his defamation, libel, and slander claims.  (*See* BSK & Richmond Reply 8.)  Plaintiff claims in his Opposition that he was unaware of his IIED claim "until the information necessary to suspect . . . Plaintiff was a victim became knowable . . . [through] the analysis of the . . . hearing transcripts and . . . the post hearing brief for the Brown hearing" during September 2021.  (*See* Pl's BSK & Richmond Opp'n 6.)  However, Plaintiff also alleged in his Opposition that "one of the most important acts of [IIED] [was] the publication of Plaintiff's private medical information [in the September 5, 2019 meeting minutes]," (*id.* at 23), and also recounted what he considered other acts of IIED, the most recent of which was "defendants['] filing of frivolous disciplinary charges" on June 17, 2020, (*id.* at 25; Compl. 16).

The Court finds that Plaintiff's assertion that he was unaware of the acts constituting IIED until September 2021 to be implausible, given Plaintiff's simultaneous claims that Defendants' actions on multiple occasions, including September 5, 2019 and June 17, 2020,

constitute IIED.  Plaintiff cannot plausibly claim that Defendants engaged in the kind of

shocking and outrageous intentional behavior required to state a claim for IIED on those

occasions, which one court has described as conduct "so outrageous in character, and so extreme

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community," while simultaneously claiming he was unaware that

he was a victim of such conduct until September 2021, almost two years later.  *Murphy v. Am.*

*Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983).[16]  Thus, the Court will accept Plaintiff's

allegation that June 17, 2020 was the final occasion on which Defendants committed an act that

constituted IIED.  Because the statute of limitations expired one year from that date, Plaintiff's

IIED claim is time-barred.  *See Solomon*, 2014 WL 1271192, at *19 ("[T]he limitations period

applicable to claims for [IIED] is one year.").

        Finally, the Therapy Center Defendants allege that Plaintiff's medical malpractice claim

must be dismissed because it is time-barred.  (*See* Therapy Ctr. Defs' Mem. 5.)  Plaintiff has

claimed that he was unaware he was a victim of medical malpractice based on his single

interaction with Mr. Snow of TTC on December 19, 2019, because he "was unaware of the

malpractice until he was informed of such during September of 2021."  (*See* Pl's Therapy Ctr.

Defs Opp'n 23.)  However, Plaintiff also stated in his initial Complaint that after his single

appointment with Dr. Snow of TTC on December 9, 2019, he "informed [BCSD] in an email that

---

[16] Under New York law, an IIED claim "has four elements: (i) extreme and outrageous
conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional
distress; (iii) a causal connection between the outrageous conduct and injury; and (iv) severe
emotional distress."  *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993); *see also Turley
v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157–58 (2d Cir. 2014).  "The element of outrageous
conduct is 'rigorous, and difficult to satisfy,' and its purpose is to filter out trivial complaints and
assure that the claim of severe emotional distress is genuine."  *Medcalf v. Walsh*, 938 F. Supp. 2d
478, 488 (S.D.N.Y. 2013) (quoting *Howell*, 612 N.E.2d at 702).

[his] experience at [TTC] was miserable and in [his] judgment the professional conduct [he] was

exposed to may be considered malpractice." (Compl. 12–13.)  Additionally, Plaintiff has

specifically alleged that "Snow is the only employee of [TTC] to actually interact with [him]."

(Pl's Supervisory Defs Opp'n 48.)  Thus, the Court finds it simply implausible that Plaintiff was

unaware of the circumstances that constituted malpractice at the time of his only interaction with

any Therapy Center employee when he explicitly mentioned that he believed he had experienced

malpractice at the time of that interaction.  Thus, the Court assumes that the statute of limitations

for Plaintiff's medical malpractice claim began running on December 9, 2019.  As such,

Plaintiff's medical malpractice claim was timely brought because he filed his Complaint on

March 29, 2022.

### b.  Notice of Claim

The Supervisory and BOE Defendants argue that Plaintiff's state law claims should be

dismissed against them because Plaintiff has failed to file notices of claim as required by

Education Law § 3813 and Municipal Law § 50.  (Supervisory Defs' Mem. 25.)

"State claims brought under state law in federal court are subject to state procedural

rules."  *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y.

Sept. 27, 2017) (ultimately citing *Felder v. Casey*, 487 U.S. 131, 141 (1988)); *see also Hardy v.

N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("[I]n a federal court, state

notice-of-claim statutes apply to state-law claims." (emphasis omitted)).

New York Education Law § 3813 provides:

> no action . . . founded upon tort shall be prosecuted or maintained against any
> [school district, board of education, board of cooperative educational services,
> school][,]  or against any teacher or member of the supervisory or administrative
> staff or employee where the alleged tort was committed by such teacher or member
> or employee acting in the discharge of his duties within the scope of his
> employment and/or under the direction of the board of education, trustee or trustees,
> or governing body of the school unless a notice of claim shall have been made and

served in compliance with section fifty-e of the general municipal law.  Every such action shall be commenced pursuant to the provisions of section fifty-i of the general municipal law[.]

*Id.* at § 3813(2).  New York General Municipal Law § 50–e requires that a notice of claim be filed within ninety days of the incident giving rise to the claim.  *See* N.Y. Gen. Mun. L. § 50-e.  Pursuant to § 50–i, "[a] plaintiff must plead in the complaint that: (1) the Notice of Claim was served; (2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing N.Y. Gen. Mun. § 50).  The plaintiff bears the burden of demonstrating compliance with the notice of claim requirement.  *See Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943, 948 (App. Div. 1989), *appeal dismissed* 553 N.E.2d 1341 (N.Y. 1990).

"Notice of claim requirements are construed strictly by New York state courts.  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy*, 164 F.3d at 793–94 (citations and quotation marks omitted); *see also Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such a [n]otice of [c]laim, the complaint may be dismissed for failure to state a cause of action." (quotation marks omitted)).  Accordingly, for the state law claims asserted in this case against the Supervisory and BOE Defendants, "the failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice."  *Pustilnik v. Hynes*, No. 99-CV-4087, 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citing *Mills v. Monroe Cnty.*, 451 N.E.2d 456 (N.Y. 1983), *cert. denied*, 464 U.S. 1018 (1983)).  Plaintiff does not argue that either of these exceptions applies.

Plaintiff has not provided any evidence that he has served a notice of claim as required by Municipal Law § 50–e, nor has he pled his compliance, as required by Municipal Law § 50–i. (*See generally* Compl.; Am. Compl.)  Plaintiff argues that the Court has discretion under Education Law § 3813(2-a) to allow Plaintiff to late-file his notice of claim.  (Pl's Supervisory Defs Opp'n 42–43.)  However, while Plaintiff is correct that § 3813(2-a) does grant the Court such discretion, the statute also provides "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school." Educ. L. § 3813(2-a).  Because the Court has found that Plaintiff's defamation, libel, slander, and IIED claims are all untimely, the Court may not grant Plaintiff an extension to allow him to late-file his notice of claim.  *See Bloom v. N.Y.C. Bd. of Educ.*, No. 00-CV-2S728, 2004 WL 639613, at *4 (S.D.N.Y. Mar. 30, 2004) ("Section 3813(2–a) prohibits a court from extending the time to file a notice of claim beyond the limitations period applicable to the underlying claim[.]").  Thus, Plaintiff's defamation, libel, slander, and IIED claims against the Supervisory and BOE Defendants are dismissed.

### c.  Medical Malpractice

Plaintiff claims that the Therapy Center Defendants committed medical malpractice by agreeing with BCSD to provide impulse control therapy and having Plaintiff attend a session. (*See* Am. Compl. 18–20.)  The Therapy Center Defendants argue that Plaintiff has failed to state a claim.  (*See* Therapy Ctr. Defs' Mem. 5.)[17]

---

[17] The Therapy Center Defendants also argue that Plaintiff's claim should be dismissed because he failed to file a "certificate of merit" as required by CPLR § 3012-a.  (*See* Therapy Ctr. Defs' Mem. 5.)  However, because Plaintiff is proceeding pro se, he is not required to file a certificate of merit.  CPLR § 3012-a(f) ("The provisions of this section shall not be applicable to a plaintiff who is not represented by an attorney."); *see also Rabinovich v. Maimonides Med. Ctr.*, 113 N.Y.S.3d 198, 202 (App. Div. 2019) (noting that "[p]ro se plaintiffs who commence medical malpractice actions are not bound by [CPLR § 3012-a] at all, since the aim of the statute is to prevent the filing of frivolous actions by attorneys" (citations omitted)).

"In order to make out a prima facie case for medical malpractice, plaintiff must allege that (1) the physician owed a duty of care to the plaintiff; (2) the physician breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries." *Banks v. United States*, No. 10-CV-6613, 2011 WL 4100454, at *16 (S.D.N.Y. Sept. 15, 2011) (alteration, citation, and quotation marks omitted), *report and recommendation adopted*, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011).  Under New York law, "'medical malpractice is . . . a form of negligence. . .,' and 'conduct may be deemed malpractice, rather than negligence, when it constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.'" *Radin v. Tun*, No. 12-CV-1393, 2015 WL 4645255, at *17 (E.D.N.Y. Aug. 4, 2015) (alterations omitted) (quoting *Scott v. Uljanov*, 541 N.E.2d 398, 399 (N.Y. 1989)); *see also Pearce v. Feinstein*, 754 F. Supp. 308, 310 (W.D.N.Y. 1990) ("The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of the facts.  To establish a prima facie case of malpractice, expert testimony is normally necessary to allow the jury to determine the proper standard of care." (citations and quotation marks omitted)).

"[I]n order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care." *Isaac v. City of N.Y.*, No. 17-CV-1021, 2018 WL 1322196, at *7 (S.D.N.Y. Mar. 13, 2018) (citations omitted); *see also Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 329–30 (S.D.N.Y. 2008) (dismissing medical malpractice claim because "plaintiffs do not

allege how [defendant's] alleged conduct deviated from accepted medical practice and caused them any harm").

At the outset, Plaintiff has specifically alleged that "Snow is the only employee of [TTC] to actually interact with [him]." (Pl's Supervisory Defs Opp'n 48.) Thus, as a matter of law, Plaintiff cannot state a claim for medical malpractice against Gerety, Silverstein, or TTC because they owed him no duty of care. It is black-letter law that "[a] physician's duty of care is ordinarily one owed to his or her patient." *Purdy v. Pub. Adm'r of Cty. of Westchester*, 526 N.E.2d 4, 8 (N.Y. 1988); *see also Davis v. S. Nassau Cmtys. Hosp.*, 46 N.E.3d 614, 619 (N.Y. 2015) (explaining that New York courts have declined to impose a broad duty of care extending from physicians past their patients "to members of the . . . community individually" (alteration in individual) (citation omitted)); *Koltz v. Bezmen*, 822 F. Supp. 114, 118 (E.D.N.Y. 1993) ("Under New York law, a physician-patient relationship is a prerequisite for a medical malpractice action.")

Plaintiff alleges that he met with Snow a single time. (*See* Am. Compl. 9–10.) Plaintiff further alleges that during that meeting, Plaintiff showed Snow the "prescription" he had received from Haynsworth and Snow responded "I don't have a lot of information about the arrangement [Gerety] made with [] Haynsworth. I will get more information before next week's session." (*Id.* at 19.) Plaintiff does not otherwise allege whether Snow provided any treatment and, if so, what the treatment entailed. (*Id.*) Nevertheless, Plaintiff asserts that "Snow should have ensured that [P]laintiff was proceeding with informed consent. Snow should not have agreed to conduct therapeutic sessions with the false promise of providing [i]mpulse [c]ontrol [t]herapy. Snow should not have held even one therapy session under the false premise of conducting an [i]mpulse [c]ontrol [t]herapy." (*Id.*) Finally, Plaintiff claims that "Snow . . .

caused [P]laintiff to undergo medically unnecessary and unwarranted medical services and caused emotional pain and suffering [and also] interfered with an ongoing medical relationship and course or treatment." (*Id.* at 20.)

The Court assumes without deciding that Plaintiff has stated a cognizable injury in the form of "emotional pain and suffering," but finds that Plaintiff's claim must fail as a matter of law because he has alleged no facts as to the negligent treatment Snow provided or how that treatment caused his injury. *See Isaac*, 2018 WL 1322196, at *7 ("[I]n order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and *allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care*." (emphasis added)). For example, Plaintiff has not alleged that Snow prescribed medication, provided any sort of mental health counseling, or directed Plaintiff to commence a course of treatment of any kind. Plaintiff's claims that Snow "should not have agreed to conduct therapeutic sessions with the false promise of providing [i]mpulse [c]ontrol [t]herapy," but Plaintiff's own allegations indicate that Snow was unfamiliar with the treatment plan developed by Gerety and Haynsworth and that Snow told Plaintiff that he would get "more information" about it prior to meeting him again. (Am. Compl. 9.) Plaintiff's conclusory allegation that Snow should have "ensured Plaintiff was proceeding with informed consent" presumes that Snow actually provided any treatment, which, as already noted, Plaintiff has not alleged. (*Id.* at 9.) Thus, because Plaintiff has failed to allege any facts as to the negligent treatment Snow provided or how that treatment caused his alleged injury, Plaintiff's medical malpractice claim against Snow must be dismissed. *See, e.g.*, *Radin*, 2015 WL 4645255, at *18 ("Plaintiff's factually unsupported allegations that the [defendant] attempted to provide her with unwanted psychiatric care is insufficient to state a claim. Plaintiff concludes that the [defendant] breached the standard of care without providing

any specific factual allegations from which such a conclusion might be drawn. . . ."); *Koulkina*, 559 F. Supp. 2d at 329–30 (dismissing medical malpractice claim because "plaintiffs do not allege how [defendant's] alleged conduct deviated from accepted medical practice and caused them any harm"); *Flemming v. Velardi*, No. 02-CV-4113, 2003 WL 21756108, at *3 (S.D.N.Y. July 30, 2003) ("Even construing plaintiff's claims broadly, he does not state a medical malpractice claim, as plaintiff has not alleged [the doctor's actions] deviated from accepted medical practice . . .").[18]

### C. Service

Plaintiff has failed to serve two Defendants in this action: Richard Kass and Daniel Snow. (*See* generally Dkt.) Plaintiff claims that these individuals are "evading notice of service of [this] lawsuit." (*See* Pl's Supervisory Defs Opp'n 47.)

Rule 4(m) requires a plaintiff to effect proper service on a defendant within 90 days of the filing of the complaint. *See* Fed. R. Civ. P. 4(m). If a plaintiff fails to do so, the Court "must dismiss the action without prejudice against [the] defendant or order that service be made within a specified time." *Id.* However, if the plaintiff has demonstrated good cause for a failure to effect service, the court must extend the time to effect service. *Id.*; *see also Blessinger v. United States*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997) (noting that if a plaintiff demonstrates good cause, "the extension [to serve] is mandatory"). To determine whether a plaintiff has demonstrated good cause, "[c]ourts generally consider three factors . . . : (1) whether the delay resulted from inadvertence or whether a reasonable effort to effect service has occurred, (2) prejudice to the defendant, and (3) whether the plaintiff has moved for an enlargement of time to effect service

---

[18] The Court notes that Plaintiff has also failed to serve Snow, and the time for service under Fed. R. Civ. P. 4(m) has expired. However, as noted in § II.C *infra*, the Court will provide Plaintiff with an opportunity to effect service.

under Rule 6(b) of the Federal Rules of Civil Procedure." *Echevarria v. Dep't of Corr. Servs.*, 48 F. Supp. 2d 388, 392 (S.D.N.Y. 1999).

Plaintiff's time to serve Defendants Kass and Snow under Rule 4(m) has long expired, and Plaintiff has not requested an extension.  The Court liberally construes Plaintiff's claim that Kass and Snow are evading service as a request for such an extension.  The Court also accepts Plaintiff's contention that his difficulty in serving Kass and Snow is due to their efforts to avoid being served.  The Supervisory and BOE Defendants have stated only that the Court should not delay its consideration of their Motion To Dismiss based on Plaintiff's inability to serve Kass and Snow, but have not asserted that Kass or Snow should be dismissed.  (*See* Supervisory Defs' Reply 29–30.)  BSK and Richmond have asserted that Plaintiff is responsible for serving Kass, but have not argued that Kass should be dismissed.  (*See* BSK & Richmond Reply 6.)  The Therapy Center Defendants have not taken a position on Snow or Kass's failure to appear.  (*See generally* Therapy Ctr. Defs' Mem.; Therapy Ctr. Defs' Reply.)

Given that the Court has found that, construing his submissions liberally, Plaintiff has alleged reason for the delay and requested an extension to serve and that Defendants have not argued that prejudice would result from such extension, the Court grants Plaintiff an additional 60 days from the date of this Opinion to serve Kass and Snow.  *See Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889, at *5 (S.D.N.Y. Mar. 29, 2017) (granting pro se Plaintiff's request for extension of time to serve defendants where Plaintiff had made "a reasonable effort to effect service and [d]efendants d[id] not allege any prejudice to [the unserved] [d]efendant").

The Court cautions Plaintiff that he must make every effort to serve Kass and Snow and that failure to do so will be grounds for their dismissal from this Action.  *See Kelley v. Universal Music Grp.*, No. 14-CV-2968, 2017 WL 2889505, at *3 (S.D.N.Y. July 5, 2017) (dismissing

defendants where pro se plaintiffs failed to effect service of amended complaint or second amended complaint on those defendants), *report and recommendation adopted by* 2017 WL 3995623 (S.D.N.Y. Sept. 11, 2017).

### III.  Conclusion

For the foregoing reasons, all of Plaintiff's claims are dismissed, with the exception of his Fourteenth Amendment substantive due process claim.  Because Plaintiff's substantive due process claim is brought only against the Supervisory and BOE Defendants, all other Defendants who have been served are dismissed.

Plaintiff has requested leave to amend his Complaint.  (*See*, *e.g.*, Pl's Supervisory Defs Opp'n 4.)  If Plaintiff chooses to amend his Complaint, he must file his amended complaint within 30 days.  The amended complaint will replace, not supplement, the original and first amended complaint.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.  The Court will hold a status conference in this matter on May 2, 2023 at 3:00 PM.  The Clerk of Court is respectfully directed to terminate the pending Motions. (Dkt. Nos. 42, 46, 50.)


SO ORDERED.

Dated:   March 28, 2023
         White Plains, New York

_____
        KENNETH M. KARAS
        United States District Judge